# Richmond.

## SPILMAN V. PAYNE.

### JANUARY 26th, 1888.

1. PRIORITIES—*Decedent's estate—Debts due the State.*—The State has no priority, under Code 1873, ch. 126, § 25, on decedent's estate for taxes collected by him as a tax-collector of the State and not accounted for, but only for taxes assessed upon him during his lifetime.
2. IDEM—*The State's money—Ear-marking.*—Where money collected for tax-bills placed in their hands by tax-collector was paid over by his deputies to his administrator as "the State's money," *held*, the administrator properly paid that money to the State in preference to the creditors of the tax-collector.
3. BANKS—*Deposit by judgment debtor—Effect.*—Judgment debtor of bank deposited money with its branch subject to his own check, and the money was lost by the bank's failure:

HELD:

> The deposit did not discharge the judgment, and is no set off against the assignee thereof.

Appeal from decrees of circuit court of Fauquier county, rendered September 18th, 1883, and December 22d, 1883, in the suit of Payne, receiver, against Joseph H. Nelson, late sheriff of said county, and as such committee administrator of William M. Hume, deceased. The decree being adverse to the interests of John A. Spilman and E. M. Spilman, Jr., administrator of. L. R. Spilman, deceased, two of the defendants, they obtained an appeal and *supersedeas*.

*Hunton & Son*, for the appellants.

*R. Taylor Scott,* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The object of the litigation in this cause was the settlement of the estate of William M. Hume, deceased, late of Fauquier county, the ascertainment of his debts, their character, priorities, and liens, and for the distribution of the assets according to law.

It appears from the record, that, William M. Hume was sheriff of Fauquier county from 1st of July, 1852, to 25th of April, 1872, except during the period of the war, when there was no sheriff in office in the said county. W. M. Hume died, intestate, August 12th, 1872, and Joseph H. Nelson was appointed and qualified as his administrator on 4th December, 1872. Hume owned no real estate at his death. His estate, wholly personal, consisted of judgments owned by him, balances due to him by his deputies, notes and other choses in action.

The debts due by him at his death consisted of a large amount due to the State for taxes for which he was accountable and in default, fiduciary debts due by him as sheriff, administrator, &c., judgments against him on which executions of *fi. fa.* had issued and gone into the hands of the officers and thus had acquired "liens by delivery," and judgments and general debts for which there was no lien.

One of these judgments was a judgment in the name of the President and Directors and Company of the Farmers Bank of Virginia, plaintiffs, *v.* W. Flowewee, W. M. Hume, and John Strother, for the sum of $4,658 48, with interest from February 5th, 1856, and $21 58 costs; which judgment had been assigned to Luther R. Spilman, and by him had been assigned conditionally to John A. Spilman. To enforce payment of this judgment, L. R. Spilman had in Hume's lifetime commenced a suit in chancery against Hume in his own right,

and as sheriff, administrator of W. Flowewee, and, as sheriff, administrator of John Strother. After Hume's death John A. Spilman filed his bill against Joseph H. Nelson, administrator of Hume, for settlement of the estate of Hume, and payment of this judgment.

A. D. Payne, as receiver of Shackelford & Spilman, also filed a creditor's bill for the same purpose. The court finally dismissed all the aforesaid suits, except that of *Payne, receiver,* v. *Hume's administrator,* as all the objects of the other suits could be adjusted in this.

It is claimed, though not proved, that a large part of the debts due to Hume by his deputies were for taxes which the said deputies had collected, and had not paid over, and for which Hume was in default to the commonwealth.

Nelson, administrator of Hume, was the only solvent surety on Hume's official bond, for the years '70–72, and was liable for any default in those years not made good out of the estate. Nelson made collections from these deputies and applied the money so collected to the payment of the amounts due the commonwealth for taxes, as being, in his opinion, the first class of liabilities under the statute of Virginia, and thereby exonerating his liability as the only solvent surety of the said sheriff, Hume.

There was an order of reference by a decree entered in the cause December 17th, 1877, directing the master commissioner to settle and report an account of the actings and doings of said Joseph H. Nelson, as administrator of W. M. Hume, deceased, to report all the assets of the said estate in the hands of the said administrator, and the debts outstanding, and their priorities. After a searching investigation, and numerous reports by various commissioners, a report was returned, which charged the administrator of Hume with all the collections which he had made from the deputies, and made them applicable to his debts generally.

Exceptions filed to this report by Hume's administrator

raised the question, among others, whether the several amounts
in the hands of the deputies, being "ear-marked," as alleged,
were properly turned over to the commonwealth of Virginia,
to the exclusion of the other creditors of W. M. Hume. On
the 18th of September, 1883, the court, by a decree of that
date, sustained the exceptions of the administrator on the
point of the application by him of the several sums of money
collected from the deputies, as aforesaid, to the indebtedness of
the said W. M. Hume, as sheriff, to the commonwealth of Vir-
ginia to the exclusion of the other creditors of his estate, and
recommitted the report for conformity accordingly. On the
12th of December, 1883, the commissioner filed his report con-
forming to the said decree in the matter of these payments to
the commonwealth. On the 22d December, 1883, the court,
by decree of that date, confirmed the report of the commis-
sioner of the 12th of December, 1883, and ordered disburse-
ment of the estate according to said reports. To which de-
crees this appeal is taken, and errors are assigned by both
appellant and appellee.

This litigation is, in fact, a contest among creditors for pri-
ority in the disbursement of an estate greatly inadequate to
the payment of all its liabilities.

It is material, first, to ascertain the order of priorities in
which the assets of Hume's estate are to be disbursed by his
administrator; and one of the main questions to be deter-
mined is, whether the statute (Code 1873, ch. 126, sec. 25,)
gives the State any priority in the disbursement of an insol-
vent decedent's estate, except for the taxes due from the insol-
vent himself, individually as a tax-payer, which have been
assessed on his property; or whether the statute gives priority
to the State as a creditor of a tax-collector for taxes collected
and not paid over. The language of the twenty-fifth section
of chapter 126 is, that in the settlement of the liabilities of an
insolvent estate, there shall be first paid debts due the United
States; second, taxes and levies assessed upon the decedent

previous to his death. The assessment of taxes is the ascertaining of the proportion which each tax-payer is to pay.

It is plain, from the language of this provision, that the State has a lien on Hume's estate only for the tax due by Hume personally, and which had been assessed previous to his death; and has no lien on his estate, as a deceased defaulting sheriff for taxes collected and unaccounted for by him. Yet, while under the statute the State stands toward Hume's estate only as a general unsecured creditor to receive its dividend with the other general creditors, we think that the doctrine of " *ear-marking* " does apply to the moneys in the hands of Hume's deputies, collected by them on the tax-bills due to the State placed in their hands, and which they have acknowledged and paid as the State's money to Hume's personal representative to be paid, through him, into the treasury of the State.

These specific collections in the hands of the deputies, voluntarily paid by them, not as a part of Hume's estate, but as the collections made by them of tax-bills due the State, are within the reason of the rule of " ear-marking," and we think, therefore, that the circuit court did not err in deciding that J. H. Nelson, administrator of W. M. Hume, deceased, had the legal right to apply the several sums of money collected by him from the deputies of Wm. M. Hume, sheriff, to the debt due by the said Hume, as sheriff, to the State of Virginia—to the exclusion of the other creditors of the said William M. Hume.

It appeared, in the progress of the cause, that subsequent to the rendition of the judgment in the name of the Farmer's Bank against Hume, assigned to Luther R. Spilman, and by him, to John A. Spilman, Hume had in 1862 a considerable sum of money to his credit as a depositor in the Alexandria Branch Bank—all of which was lost by the insolvency of the Farmers Bank of Virginia, caused by the war; and the administrator of Hume contends that this deposit in the Branch Bank should be allowed as an offset to, and discharge or extin-

guishment of, the said judgment of the Farmers Bank against Hume, in the hands of Spilman, assignee. But we are of opinion that the said judgment of the Farmers Bank, assigned to Spilman, was not discharged or satisfied by the subsequent deposits of Hume, which were subject only to his check; and this judgment, not having lien by execution and delivery, is properly placed among the general debts, to be paid *pro rata.*

We find no error in the decree complained of, and the same is *affirmed.*

DECREE AFFIRMED.