In the Matter of THE CARNEGIE TRUST COMPANY, in Liquidation.

In the Matter of the Application of the SUPERINTENDENT OF BANKS OF THE STATE OF NEW YORK, Appellant, for Leave to Declare and Pay a Supplemental First Dividend to the Creditors of Said CARNEGIE TRUST COMPANY; THE TREASURER OF THE STATE OF NEW YORK, Respondent.

Superintendent of banks — powers and duties in case of insolvent banks and trust companies — right to appeal — state funds on deposit with insolvent trust company — state entitled to preference in payment.

1. Under the Banking Law the superintendent of banks is authorized to take possession of insolvent banks and distribute their assets, and in case of conflicting claims thereto to apply to the

Supreme Court for its determination.   Such an application is a spe-. cial proceeding and where a determination has been made by that court giving preference to state funds the superintendent representing creditors generally has a right to appeal therefrom.

2. The state, by virtue of section 35 of the Constitution of 1777 (Cons. 1894, art. 1, § 16), has succeeded to the right which the king had at common law to preference in payment of debts due from an insolvent, and where it has funds on deposit with an insolvent trust company it is entitled to a preference in payment over other depositors and creditors not having a prior specific lien on the assets.

*Matter of Carnegie Trust Co.*, 151 App. Div. 606, affirmed.

(Argued October 8, 1912; decided November 19, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 18, 1912, which reversed an order of Special Term confirming the finding of a referee that the state treasurer was not entitled to the preferential payment, over unsecured general creditors, of state canal funds deposited with an insolvent trust company.

The facts, so far as material, are stated in the opinion.

*Frank M. Patterson, Joseph M. Hartfield* and *G. V. Smith* for appellant.   The state as a general depositor became divested of any priority attaching to it as a sovereign authority and must share equally in the assets of the insolvent bank with other creditors of that class. (*Scammon* v. *Kimball*, 92 U. S. 362; *Ætna Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Thomson* v. *Riggs*, 5 Wall. 663; *Bank of U. S.* v. *Planters' Bank of Georgia*, 9 Wheat. 907; *Bank of Commonwealth of Kentucky* v. *Wister*, 2 Pet. 318; *Curran* v. *State of Arkansas*, 15 How. [U. S.] 304; *State* v. *Bank of South Carolina*, 1 Rich. [S. C.] 63; *State* v. *Bank of Tennessee*, 5 Baxter, 1; *Brown* v. *Sheldon St. Bank*, 117 N. W. Rep. 289; *Watts* v. *Comm. of Cleveland Co.*, 95 Pac. Rep. 771; *Meyers* v. *Board of Education*, 5 Kan. 87; *Santiago County* v. *California Nat. Bank*, 52 Fed. Rep. 59.)   The

common-law right of the state to be preferred over all creditors in the collection of taxes is unquestioned, but the prerogative of the English crown to be preferred over creditors generally never existed in this state. (N. Y. Col. Laws, 1894; N. Y. Const. of 1777, art. 35; *Middlesex Co.* v. *State Bank*, 29 N. J. Eq. 268; *State* v. *Harris*, 2 Bailey [S. C.], 598; *Bank of State* v. *Gibbs*, 3 N. C. 377; *Zimmerman* v. *C. Savings Bank*, 127 N. W. Rep. 351; *Central Trust Co.* v. *Third Ave. R. R. Co.*, 186 Fed. Rep. 291; *Potter* v. *Fidelity & Deposit Co.*, 58 So. Rep. 714; *Matter of Taylor*, 134 N. Y. Supp. 1120.) The superintendent of banks is aggrieved by the order appealed from, and is entitled to maintain this appeal. (*Matter of Hodgman*, 140 N. Y. 421; *Matter of Union Bank*, 204 N. Y. 313; *L. T. Co.* v. *Higginbotham*, 136 App. Div. 747; *People ex rel. Burnham* v. *Jones*, 110 N. Y. 509; *People ex rel. French* v. *Town*, 1 App. Div. 127; *People ex rel. S. S. T. Co.* v. *Willcox*, 196 N. Y. 212; *People* v. *St. Nicholas Bank*, 77 Hun, 159; *Bockes* v. *Hathorn*, 78 N. Y. 222.)

*Thomas Carmody, Attorney-General* (*Henry Selden Bacon* of counsel), for respondent. The superintendent of banks is not aggrieved by the order appealed from and his appeal should, therefore, be dismissed, with costs. (*Bryant* v. *Thompson*, 128 N. Y. 426; *Matter of Hodgman*, 140 N. Y. 421; *McLouth* v. *Hunt*, 154 N. Y. 179; *Matter of Richmond*, 63 App. Div. 488; *Matter of Coe*, 55 App. Div. 270; *Matter of Heldmann*, 151 App. Div. 234; *Isham* v. *N. Y. Assn.*, 177 N. Y. 218.) The state, as sovereign, has the absolute right to preference in payment over ordinary unsecured creditors. (1 Coke on Litt. 1316; 33 Hen. VIII, ch. 39, § 74; *Giles* v. *Grove*, 9 Bing. 128; *Grove* v. *Aldridge*, 9 Bing. 428; *Fulton Co.* v. *State*, 200 N. Y. 400; *C. T. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 110 N. Y. 250; *Matter of A. I. Const. Co.*, 19 App. Div. 415; *Matter of Donaldson*, 27 Misc. Rep.

745; *Matter of T. & T. A. Co.*, 68 Misc. Rep. 440; *Wise v. Wise Co.*, 153 N. Y. 507; *Seay v. Bank of Rome*, 66 Ga. 609; *Robinson v. Bank of Darien*, 18 Ga. 65; *Booth v. State*, 134 Ga. 163.)

HAIGHT, J.   Under the findings of the referee it appears that the Carnegie Trust Company was a corporation transacting a banking and trust business, pursuant to the Banking Law of this state, and that by a resolution of the commissioners of the canal fund of the state it was designated as a depositary of such fund; that thereafter and from time to time the treasurer of the state made deposits with the trust company in different amounts, and that on the 7th day of January, 1911, the trust company held on deposit the sum of $135,843.85 belonging to the state; that all of the amount of such deposit was a part of the canal fund except the sum of $3,418.93, which belonged to the general fund of the state.   On the 29th day of October, 1910, at the instance of the treasurer of the state, the trust company caused to be executed and delivered to the state treasurer two bonds, conditioned that in the event of default on the part of the trust company the sureties will repay the state the percentage which the amount of the bond bears to the total deposits.   One bond was executed by the United States Fidelity and Guaranty Company of Baltimore, Maryland, as security, in the sum of $75,000; the other bond was executed by the Ætna Indemnity Company of Hartford, Conn., in the sum of $190,000.   Thereafter and on the 7th day of January, 1911, the trust company went into liquidation and passed into the hands of the superintendent of banks of the state, pursuant to the provisions of the Banking Law, and thereupon the United States Fidelity and Guaranty Company paid to the treasurer of the state its proportional percentage of the claim, amounting to the sum of $38,471.12.   This payment was applied by the treasurer in discharging the amount of the

deposit belonging to the general fund, and the rest upon the amount of the canal fund held by the trust company on deposit, leaving the sum of $97,372.73 of the canal fund unpaid. It does not appear that the Ætna Indemnity Company of Hartford has paid any sum whatever on the indemnity bond executed by it to the treasurer. The referee found, as conclusions of law, that the treasurer of the state was not entitled to priority over the claims of the general creditors of the company, but that his claim should be allowed as a general claim against the company. Exceptions were taken by the state treasurer to the conclusions of law so found, and the question presented for our determination on this review is as to whether the Appellate Division properly reversed the judgment entered upon such conclusions.

In the first place we are met with a preliminary objection presented by the attorney-general, in which he claims that the superintendent of banks has no power to appeal to this court, and that, therefore, his appeal should be dismissed. Under the Banking Law the superintendent is now authorized to take possession of insolvent banks, to collect in their assets and to make distribution among the creditors and stockholders. He is empowered to declare one or more dividends after the expiration of time fixed by statute, to be paid " to such persons, and in such amounts, and upon such notice, as may be directed by the Supreme Court in the judicial distict in which the principal office of such corporation or individual banker is located." Also in case of objections made to any claim, he is required to present the same to the Supreme Court for determination; and in cases of doubt or conflicting claims, he may ask for an order of the Supreme Court disposing of such claims. In this case a claim was made on behalf of the state treasurer to have the amount of the state funds deposited with the bank preferred over the claims of ordinary depositors. The superintendent had the right, therefore, under the statute to make application to the

Supreme Court to determine that question.   The application having been made pursuant to a statute, it became a special proceeding, and in view of the fact that the superintendent represented the creditors generally in his official capacity as well as the state and the stockholders and would be personally liable for any unauthorized distribution of the funds, we are of the opinion that he had the power to appeal from the order of the Appellate Division under the provisions of the Code empowering an appeal from a final order in special proceedings.

In considering the case upon the merits, the first question that arises is as to whether the funds of the state deposited with the trust company were preferred by any express provisions of the statute.   The commissioners of the canal fund are created by the provisions of the Constitution.   (Art. 5, § 5.)   Their powers and duties were originally prescribed by the Laws of 1817 (Chap. 262, § 1), in which it was made the duty of the commissioners of the canal fund to receive, arrange and manage to the best advantage all things belonging to the said fund; to borrow from time to time moneys on the credit of the People of the state, and out of such funds to make payments, etc.   This provision, after passing through several revisions of the statute, has finally been incorporated in our present State Finance Law.   (Art. 4, §§ 60, 61, 62.)   The latter section authorizes the commissioners to deposit the moneys belonging to such fund or the canal debt sinking fund with any safe incorporated moneyed institution or banking association in this state and may make such contracts therewith for the interest on and the duration of such deposits as will best promote the interest of the funds.   Pursuant to this provision, as we have seen, the commissioners of the canal fund designated the Carnegie Trust Company as a depositary for such funds, and thereupon the treasurer paid over to such depositary the funds which he now seeks to have preferred.

Section 189 of the Banking Law (Cons. Laws, ch. 2), among other things, provides as follows: "Any court having jurisdiction to appoint a trustee, guardian, receiver or committee of the estate of a lunatic, idiot or habitual drunkard, or to make any fiduciary appointment, may appoint any such corporation to be such trustee, guardian, receiver or committee, or to act in any other fiduciary capacity. All moneys brought into court by order or judgment of any court of record may be deposited with any such corporation," etc. Section 190, among other things, provides, that such trust company, " if dissolved by the legislature or the court, or otherwise, the debts due from the corporation as such executor, administrator, guardian, trustee, committee or depositary shall have the preference."

The contention is made that the provision with reference to a depositary was intended only to include moneys brought into court and deposited with the company by an order of the court, and that it was not intended to include public moneys or canal funds which the commissioners had authorized to be deposited with the trust company. In view of the fact that we have reached a conclusion upon another question upon which we prefer to rest the determination of this case, it becomes unnecessary to determine that question.

We think it clear that at common law the king was entitled to preference in the payment of debts due to him from an insolvent before that of a subject. This is stated in 1 Coke on Littleton (131b). Under the statute (33 Hen. VIII, ch. 39, §. 74) it was enacted that the king's debt shall, in suing out execution, be preferred to that of every other creditor who has not obtained judgment before the king commenced his suit. This apparently has remained the law of England down through and since the American Revolution. (*Giles* v. *Grover*, 9 Bing. 128.) By our Constitution of 1777, section 35, it was provided that "Such parts of the common law of Eng-

land and of the statute law of England and Great Britain and of the acts of the legislature of the Colony of New York as together did form the law of said Colony on the 19th day of April in the year of our Lord 1775, shall be and continue the law of this State, subject to such alterations and provisions as the legislature of this State shall from time to time make concerning the same.   *   *   *   That all such parts of the said common law, and all such of the said statutes and acts aforesaid, or parts thereof, as may be construed to establish or maintain any particular denomination of christians or their ministers or concern the allegiance heretofore yielded to, and the supremacy, sovereignty, government or prerogatives claimed or exercised by the King of Great Britain and his predecessors, over the Colony of New York and its inhabitants, or are repugnant to this constitution, be and they hereby are, abrogated and rejected."

While our present Constitution differs in phraseology it is not apparent that there is substantial variation in the meaning. The clauses of the common law, above quoted from the Constitution of 1777, which was abrogated and rejected under our present Constitution, are condensed in the single sentence, "But all such parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this Constitution, are hereby abrogated." (Const. 1894, art. 1, § 16.) Under our Constitution we have no king. The king, therefore, and the prerogatives that were personal to him being repugnant to our Constitution are abrogated. But his sovereignty, powers, functions and duties, in so far as they pertain to civil government, now devolve upon the people of the state and consequently are not in conflict with any of the provisions of our Constitution. Inasmuch, therefore, as the claims or moneys due the king, for the support and maintenance of the government, whether derived from taxes or other sources of income, were preferred over the claims of others, it follows that under the first sub-

division of the provision of the Constitution of 1777, quoted, such preference became a part of the common law of our state, and is so continued under our present Constitution.

In *Matter of the Receivership of the Columbian Insurance Company* (3 Abb. Ct. of App. Dec. 239), the receivers of the corporation, appointed in proceedings to dissolve the company, applied to the court, stating that they had received notice from the receiver of taxes that he held a warrant for the taxes due from the state, amounting to a large sum, and asked for its payment *pro rata* with the other claims. The receiver of taxes also applied to the court, at the same time, for an order to show cause why the taxes should not be paid in full. The court made an order denying the application of the receiver and ordered the payment of the claim of the state in preference to the other demands. In the Court of Appeals the order of the Supreme Court was affirmed, upon the ground that the warrant held by the receiver of taxes was entitled to take precedence over the other equitable claims of creditors of the corporation, that it had become a prior lien. PORTER, J., however, in delivering the opinion of the court, added thereto the following: " There is great force in the argument submitted by the counsel for the corporation of the city of New York, in support of the broad position, that the people of this State have succeeded to all the prerogatives of the British crown, so far as they are essential to the efficient exercise of the powers, inherent in the nature of civil government, and that there is the same priority of right here, in respect to the payment of taxes, which existed at common law in favor of the public treasury." (p. 242.) While it may be true that this expression of the learned judge may be regarded as obiter, still in the case of *Central Trust Company* v. *N. Y. City & N. R. R. Co.* (110 N. Y. 250–259), PECKHAM, J., in delivering the opinion of the court, after holding that the claim of the state for the payment of taxes was paramount, stated,

" We reiterate the statement of PORTER, J., in *In Re Receivership of the Columbian. Insurance Company,*" and then repeats the quotation above given.

We thus find our court fully committed upon the question under discussion, and we entertain no doubt as to the wisdom of now adopting it. There is one limitation, however, and that pertains to claims in which a prior specific lien has been obtained by the creditors. (*Wise* v. *Wise Company,* 153 N. Y. 507.)

It is said that the moneys in question were part of the canal fund. We do not think it makes any difference whether it was the canal fund or the general fund, so long as it belonged to the people of the state. It was a public fund raised by taxation or by the sale of bonds which ultimately must be paid by the people; and inasmuch as the sovereign power of the king devolves upon the people, they have the right to have the public funds preferred over those of the common creditors.

There may be some conflict in the decisions of our sister states, notably that of New Jersey, which have been considered in the able opinion rendered by SCOTT, J., in the Appellate Division. We do not here deem it necessary to further discuss them. We wish, however, to call attention to the recent decision of *Guarantee Title & Trust Company* v. *Title Guaranty & Surety Company* (224 U. S. 152).

A question was raised with reference to the rights of the United States Fidelity and Guaranty Company who paid to the treasurer its proportional percentage of its claim, but inasmuch as it has not been considered or covered by any findings below, we do not deem the question now before us for determination.

The order of the Appellate Division should be affirmed, but without costs to either party, they being state officers.

CULLEN, Ch. J., VANN, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur; HISCOCK, J., not sitting.

Order affirmed.