# CHARLESTON.

WILLIAM WOODYARD, ADM'R *v.* LIZZIE SAYRE *et al.*

Submitted February 7, 1922.    Decided February 14, 1922.

1. STATES—*State at Common Law Had Priority Over General Creditors of Insolvent Debtor.*

    At common law the State had the prerogative right independently of statute to preference and priority of payment over all general creditors for all debts, taxes or other demands in the distribution of the estate of an insolvent debtor. (p. 296).

2. SAME—*State's Prior Right at Common Law Over Other Creditors of Insolvent Not Repealed or Taken Away.*

    This prerogative right to such preference and priority has not been repealed, changed or abrogated by any statute of this State, but preserved by Section 21, Article VIII of the Constitution until expressly taken away by appropriate legislation. Sections 25 and 26 of chapter 85 of the Code, relating to the distribution of estates of insolvent debtors, does not expressly nor by implication repeal or take away such common-law right.    (p. 297).

3. SUBROGATION—*Bonding Company Satisfying State Held Entitled to Subrogation to State's Prior Rights in Defaulting Officer's Insolvent Estate.*

    The surety on the bond of a defaulting sheriff having paid and satisfied to the State the amount of the defalcation in discharge of the conditions in his bond, is entitled to be subrogated to all the rights of the State, county or other municipal authority, including the priority and preference over general creditors, in the distribution of the estate of such insolvent and defaulting officer.    (p. 301).

Appeal from Circuit Court, Wirt County.

Proceeding by William Woodyard, administrator, against Lizzie Sayre and others, and from a decree therein the defendant United States Fidelity & Guaranty Company appeals.

*Reversed in part; remanded.*

*J. A McCullough, J. W. Martin* and *W. H. Wolfe,* for appellant.

*T. A. Brown* and *C. M. Hanna,* for appellee.

MILLER, JUDGE:

Two questions are presented by this appeal: The first is whether the State by prerogative right, if not by statute, is entitled to preference and priority over general creditors, not lien creditors, for state, county and other taxes collected and not accounted for, out of the estate of a deceased defaulting sheriff. And if so, second, whether the surety on the official bond of such sheriff, on discharging his liability to the State on such bond, is entitled by subrogation to the rights of the State, and to be paid according to such priority out of the estate of such officer when insolvent.

On the first proposition, it is a concessum that at common law the crown, by prerogative right and independently of any statute was entitled to priority of payment over general creditors for all debts, taxes and other demands against the estates of insolvent debtors. This proposition seems to have been recognized and followed in this country by a long line of decisions, state and federal, with but one or two exceptions, since the government of the United States was established; and to this right the State of West Virginia has succeeded, unless it has been taken away by constitution or statute. The decisions on the question, carefully collated and cited by counsel for the appellant are as follows: *United States* v. *Knight,* 14 Pet. 301, 315; *United States* v. *Herron,* 20 Wall. 251; *Dollar Savings Bank* v. *United States,* 19 Wall. 227; *Guaranty Co.* v. *Title Guaranty Co.,* 224 U. S. 152; *Marshall* v. *People of the State of New York,* 254 U. S. 380; *U. S. Fid. & Guar. Co.* v. *Union Bank & Trust Co.,* 228 Fed. 448; *U. S. Fid. & Guar. Co.,* v. *Carnegie Trust Co.,* 146 N. Y. S. 801, affirmed 213 N. Y. 629; *In re Niederstein,* 138 N. Y. S., 952; *In re Carnegie Trust Co.,* 206 N. Y. 390; *U. S. Fid. & Guar. Co.* v. *Rainey,* 120 Tenn. 357; *State of New Mexico* v. *First State Bank,* 167 Pac. 3; *State of Wyoming* v. *Foster,* 29 L. R. A. 226; *Bibbins* v. *Clark,* (Iowa), 29 L. R. A. 278; *Aetna Accident & Liability Co.* v. *Miller,* (Mont.), 170 Pac. 760. It seems to us unnecessary to enter upon any extended review of these decisions, which so well establish the proposition for

which they are cited.     This prerogative right will be en-
forced in the United States, says the court in *Marshall* v.
*New York,* whether it be regarded as a prerogative right
or a mere rule of administrative local law, binding on the
federal courts.

Our next inquiry then is, has this prerogative right of the
State been taken away, changed or modified by constitution
or statute?   Our constitution, section 21, article 8, provides
that: ''Such parts of the common law, and of the laws of
this State as are in force when this article goes into opera-
tion, and are not repugnant thereto, shall be and continue
the law of the State until altered or repealed by the Legis-
lature.''   It is asserted on behalf of Woodyard, Administra-
tor, appellee, concerning the common-law right and prero-
gative, that it has been abrogated or taken away by the
statute relating to the distribution of decedents' estates,
and because of the fact that the statute gives the State no
lien or priority, or method of enforcing the same against
the property of the decedent, and that if not specifically
repealed, this ancient right has been taken away by impli-
cation.   It is argued that this right was taken away by
sections 25 and 26 of chapter 85 of the Code.   Section 25
provides: · ''Where the assets of the decedent in the hands
of his personal representative, after the payment of funeral
expenses and charges of administration, are not sufficient
for the satisfaction of all demands against him, they shall
be applied, (1) to debts due the United States; (2) taxes
and levies assessed upon the decedent previous to his death;
(3) debts due as personal representative, guardian or com-
mittee, where the qualification was in this State, in which
debts shall be included a debt for money received by a
husband acting as such fiduciary in right of his wife; (4)
all other demands ratably, except those in the next class;
(5) voluntary obligations.''     And section 26 says: ''No
payment shall be made to creditors of any one class, until
all those of the preceding class or classes shall be fully paid.''
The argument is that while section 25 gives priority to debts
of the United States, and of the State for taxes and levies
assessed upon the decedent previous to his death, the stat-

ute gives no lien for any debts or claims not falling within the description of the statute, and though not so specifically declared, the statute is a repeal, by implication at least, of the ancient prerogative right. The case of *Hinchman v. Morris*, 29 W. Va. 673, involved the right of a deputy sheriff, under the Code of Virginia of 1860, to be subrogated to the rights of the State for taxes paid by John Morris for the year 1860, and to have the amount of such taxes declared a prior lien for his benefit against said estate. The decision in that case denying the petitioner the right to such lien was predicated on the theory that taxes were not to be regarded as debts. Judge GREEN says: "Taxes are not debts, and therefore the equitable doctrine of subrogation or implied assignment cannot without violating the fundamental principles of equity be applied to them; and its impolicy, so far as State-taxes are concerned, seems to me obvious. For, if subrogated to the rights and remedies of the State, the sheriff would be entitled to enforce any of these rights and to resort to any of these remedies after any length of time; for subrogation being an implied assignment, it transfers not only the rights but also all the remedies, which but for such assignment the assignor would have had; and as there is no statute of limitations, which bars any of the remedies of the State except as to the time in which taxes may be distrained for, of course, the sheriff, when subrogated to the rights of the State, would be subject to no such bar. Now by the Code of 1860, chap. 130, sec. 25 and chap. 131, sec. 3, all of the assets real and personal of a decedent are to be applied to the payment of demands against him in the following order:—first, debts due to the United States; second, taxes and liens assessed upon the decedent before his death; afterwards all other debts and demands in a specified order. Therefore, if the sheriff was really upon settling in full with the auditor subrogated to the rights and remedies of the State for all the taxes, he had not collected, before he so settled in full, not only could he distrain for such taxes till the expiration of two years after the 1st of July, when he received copies of the commissioners' books, but if the person, whose taxes he had

advanced, should die, he could at any time after such death bring a suit to subject such person's real and personal estate to the payment of such taxes no longer due to the State, but claimed to be due by subrogation to the sheriff. When paid to the State, they cease to be taxes assessed on the decedent's estate. The State can not collect them of the taxpayer; nor can the sheriff as one subrogated to the rights of the State. If he could do so, he could do so after any length of time. This would obviously be very impolitic, if the Code of 1860 had so provided; for it would become after a time almost impossible for a decedent's representative to prove the payment of his taxes; and the burden would rest on them to prove such payment, the simple production of the tax-tickets made out by the sheriff establishing his claim, if not disproved.''

Since the decision of *Hinchman* v. *Morris* and *Board of Education* v. *Old Dominion Etc. Co.*; 18 W. Va. 441, and *State* v. *B. & O. R. R. Co.*, 41 W. Va. 81, affirming the same proposition, we have sections 33 and 34 of chapter 30 of the Code, as amended by chapter 5 of the Acts of 1904. Section 33 gives the officer whose duty it is to collect taxes due the State, or any county, district or independent school district, the right to proceed by appropriate action or suit in any court of law or equity, or before any justice of the peace having jurisdiction. And said section 34 says that if any officer whose duty it is to collect taxes, pays into the treasury of the State, or of any county or town therein, taxes due by any person before they shall have been collected by him, he shall nevertheless have the same remedy for the collection thereof by distress, or otherwise, as if the same had not been advanced by him, except that he shall not have a lien for such taxes on the real estate on which they were assessed. It is quite manifest that these provisions of the statute materially altered the rights of the sheriff as collector of taxes, and makes taxes debts for which the officer may now sue and obtain judgment or decree, and that he may enforce the lien thereof given by statute at least on the personal estate of the tax payer, and that if the law had been then as it is now, the decisions in the cases

cited, as well as that of *Myers* v. *Miller,* 45 W. Va. 595, would have been different.

The case mainly relied on by appellee's counsel is that of *Spilman* v. *Payne,* 84 Va. 435, 4 S. E. 749, a case concededly not binding on us, but giving consideration to section 25, chapter 123, Code of Virginia 1870, substantially the same as our section 25, chapter 85 of the Code, relating to the priority of debts and claims in the distribution of decedents' estates. In that case the particular question was whether taxes collected and paid by deputies to the administrator of the deceased defaulting sheriff for the purpose of payment through him to the State were properly paid over to the State to the exclusion of other creditors, and it was held that because of the "ear-markings" it was properly so paid, but it was said that without such ear-markings, the claim of the State would have had no priority of payment out of the estate of the decedent.

In none of the cases in Virginia or West Virginia does the question of the high prerogative right of the State seem to have been suggested or considered. Such right ought not to be disregarded when presented; for it is a very high and important right, if it still exists. As said, no statute constitutional or otherwise specifically takes it away. Has it been denied by any statute? Repeal by implication is not favored in law, especially where the rights of the State or sovereign are involved. *In re Niederstein, supra,* citing *United States* v. *Herron, supra,* the statute of New York relating to the distribution of estates, substantially the same as our own, was held not to have deprived the State of the right of preference which it had at common law, the same not having been denied by any express provision of the statute. The doctrine was affirmed in *In Re Carnegie Trust Company,* 206 N. Y. 390, 99 N. E. 1095. In the Niederstein case, the case lastly cited was said to settle finally that in the State of New York the State had a preference over general creditors against the funds of an insolvent trust company on its claim for public money on deposit with such company. In *United States* v. *Herron, supra,* it was said in effect, as an exception to the general rule, that when a statute is general and any

prerogative right, title or interest would be divested or taken from the king, in such case he shall not be bound unless the statute is made by express words to extend to him. This doctrine, the court further said, had been previously asserted in two express decisions and ought to be regarded as final referring to *United States* v. *Knight*, and *Dollar Savings Bank* v. *United States, supra.* And in the more recent case of *Guaranty Company* v. *Title Guaranty Company, supra,* the Supreme Court, at page 155, says: "The comprehensive objection is made to the applicability of the provisions that the United States as a sovereign is not bound by the general language of a statute, and is not bound by the provisions of an insolvency law, unless specifically mentioned therein. This objection prevailed in the Circuit Court of Appeals, and is said to be sustained by *Dollar Savings Bank* v. *United States,* 19 Wall. 227, 239; *United States* v. *Herron,* 20 Wall. 251, 260; *Lewis, Trustee,* v. *United States,* 92 U. S. 618." And in *Marshall* v. *New York, supra,* this prerogative right of priority was extended to money and property in custodia legis, not incumbered by a prior specific lien, and to property in the hands of a receiver of the court. The same doctrine has been declared and applied in Tennessee and New Mexico with reference to statutes relating to the distribution of the estates of insolvent debtors. The last decision of the Supreme Court of the United States in *Marshall* v. *New York,* seems to be comprehensive and conclusive of the right of the State to priority or preference over general creditors of an insolvent debtor.

The second question, whether the appellant is entitled to be subrogated to the rights of the State, must now have an answer. It is admitted that the United States Fidelity & Guaranty Company has discharged its obligations on the bonds of the defaulting sheriff, as it was bound by the conditions thereof to do. Has it the right of subrogation as claimed? It would seem that there ought to be no doubt about this proposition. In *Orem, Executrix,* v. *Wrightson,* 51 Md. 34, the court affirms not only the prerogative right of the State to be first paid as a preferred creditor, out of the assets of its deceased debtor in the hands of his administrator, not covered by some antecedent lien, but also the proposition

that a surety who has discharged such debt is in equity entitled to be subrogated to the rights and remedies to which the State could have resorted to secure the payment of its debt. This case is directly in point in the present case, and cites and reviews practically all the cases on the subject.    In the case of *Watts et al.* v. *Kinney et ux.,* 3 Leigh 272, cited by the Maryland case, Judge Tucker, at page 295, says: ''He knows, if he pays the debt to the obligee, he will stand in the obligee's shoes.    He knows he will be subrogated to all the rights of the obligee, as they subsist at the time he makes his payment. He knows that a court of equity looks not to form but to substance; that it looks to the debt which is to be paid, not to the hand which may happen to hold it; that the fund charged with its payment, shall be so applied, whosoever may be the person entitled; and that it considers a debt as never discharged, until it is discharged by payment to the proper person, and by the proper person.    He knows, that the court, which permits no act of a trustee to prejudice the cestui que trust, will not permit one who stands in the relation of the creditor or obligee to the surety, to bar him of those rights which the principles of equity have secured to him.    He is conscious, that his rights do not depend on the caprice of the creditor, or the whim of an executor, or the sense of right of other creditors, but rests upon the immutable principles of justice and equity; and, in making his payment, he does it in the confidence, that he will be entitled to be indemnified to the full amount, to which his creditor could have charged the assets of the principal.''

These conclusions lead inevitably to the reversal of the decree below in so far as it denies to the appellant subrogation to the right of the State to preference and priority in the distribution of the estate of said Sayre, the defaulting sheriff of Wirt County.

*Reversed in part; Remanded.*