## HELLAWELL v. TOWN OF HEMPSTEAD.

### No. 7280.

District Court, E. D. New York.

Feb. 5, 1935.

Ferdinand I. Haber, of New York City, for plaintiff.

Spence, Hopkins & Walser, of New York City (Kenneth M. Spence and George Rosier, both of New York City, of counsel), for defendant.

INCH, District Judge.

The receiver of the First National Bank of Hempstead brings this suit against the town of Hempstead, Nassau county, Long Island, N. Y.

The plaintiff, by his bill, alleges three causes of action. The first and third causes of action relate to an alleged void pledge of assets of the bank to secure the deposit by the town supervisor of town money, representing taxes collected by the town. The second cause of action seeks to recover a certain portion of these assets so pledged on the theory that, at the time they were so pledged, the bank was insolvent and unable to meet its obligations, and that the directors and officers of the

bank knew of this condition, and that the pledge was made with intent to prefer the town and with intent to hinder, delay, cheat, and defraud other creditors of said bank.

The defendant duly answered and the issues duly came on for trial.

At the trial the plaintiff asked and received permission to amend his complaint by adding the additional reason for alleged failure of the pledge of the bank's assets "because of total lack and failure of consideration." This amendment was consented to by the defendant.

No oral testimony was offered at the trial except in regard to the second cause of action. As to all of the other issues, there is no substantial dispute of fact and only a question of law is presented.

Briefly stated, the undisputed facts on which the first and third causes of action are based are as follows: In August, 1932, the bank secured the public money so deposited by the town supervisor by pledging $50,000 of Liberty bonds owned by the bank. On January 11, 1933, the amount on deposit of this public money belonging to the town was approximately $495,000, of which $400,000 was kept by way of a certificate of deposit account and the remainder in the usual demand deposit account. The certificate of deposit account required thirty days' prior notice for withdrawal.

On January 11, 1933, the supervisor of the town charged with the due care over this fund requested further security for the town account and on or about January 17, 1933, the bank duly pledged further assets in the form of bonds and mortgages about equaling, at face value, and together with the other pledge, the deposits in question.

Thereafter the bank continued to function in the usual manner until the bank holiday was declared in March, 1933, at which time all banks, throughout the land, temporarily suspended.

Thereafter the bank was placed in the hands of a conservator and later plaintiff was duly appointed receiver.

In August, 1932, the national bank examiner apparently made no objection to the pledge then existing, although he knew of it and the comptroller of the currency in no way interfered with the operation of the bank until said March, 1933, although complete reports were before him.

On the trial there was offered no proof sufficient on which to base a finding that the bank officials intended to hinder, delay, cheat, or defraud other creditors of the bank by the giving of security for the deposit of public money, or that the security given on January 17, 1933, which is the only one complained of in this regard, was given in contemplation of insolvency with intent to prefer the town and at a time when the directors knew or reasonably should have known that the bank was insolvent within the definition of the law. Title 12 USCA § 91.

On the contrary, the proof shows the situation to have been of the same character as that recently found in the case of Nelson v. Lewis, 73 F.(2d) 521 (C. C. A. 2). See, also, McDonald v. Chemical National Bank, 174 U. S. 610, 19 S. Ct. 787, 43 L. Ed. 1106. Accordingly, such cases as Roberts v. Hill (C. C.) 24 F. 571, Cronkleton v. Ebmeier (C. C. A.) 39 F.(2d) 748, Federal Reserve, etc., v. Omaha Nat. Bank (C. C. A.) 45 F.(2d) 511, and First National Bank v. Andresen (C. C. A.) 57 F.(2d) 17, are distinguished because of the different facts appearing in such cases from those here presented.

In the case before me, while the bank was facing a condition, then generally prevailing, it was considered one of the oldest and most substantial banks in the county and, but a short while before the last pledge, the directors had written to the comptroller of currency their intention to continue to make the institution continuingly useful to the county. (Defendant's Exhibit 5.) There was nothing proven to indicate that what took place on January 11 and 17, 1933, was anything but the desire by the supervisor of the town to use due care in accordance with conditions to see that the public moneys were amply secured and an equal desire on the part of the bank to amply secure same in the manner and practice which had been previously followed.

Accordingly, I do not find that the proof justifies any finding that section 91, title 12 USCA, had been violated and this disposes of the second cause of action.

The far more important question of law is: Did the bank have any legal right to secure either in August, 1932, or in January, 1933, the deposits of public money of the defendant town?

It is undisputed that all of the deposits represented public money raised by the town by means of taxation. The town of

Hempstead is a political subdivision of the state of New York.

The transaction of the giving of the security and the leaving of the deposits sufficiently indicates consideration. It was not a gift nor loan nor a one-sided transaction.

It is now established that a national bank has no right to pledge its assets to secure such deposits of public money unless the bank is located in a state in which state banks are so authorized. City of Marion v. Sneeden, 291 U. S. 262, 54 S. Ct. 421, 78 L. Ed. 787, affirming Sneeden v. City of Marion, 64 F.(2d) 721 (C. C. A. 7).

In other words, the correct decision of this case must depend on whether in 1932 and in 1933 the state banks of the state of New York were authorized to secure deposits of public money.

In using the word "authorized" it is best to set forth the wording of the Act of June 25, 1930, c. 604, 46 Stat. 809, enacted by Congress and which reads as follows: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State." Title 12 USCA § 90.

It has been said that the main purpose of the foregoing amendment was to equalize the position of national and state banks and prevent, so far as possible, any disadvantage on the part of a national bank in competing for deposits of public funds. Lewis v. Fidelity & Deposit Co., 292 U. S. 559, 54 S. Ct. 848, 78 L. Ed. 1425, 92 A. L. R. 794.

In the City of Marion v. Sneeden Case the Supreme Court refers to the absence of any statute of the state of Illinois conferring in express terms upon banks organized under the laws of that state the general power to pledge assets to secure a deposit of any kind. Also, that there was no reported decision rendered by any Illinois court since the enactment of the general banking law of 1887 holding that such power existed as one incidental to the business of deposit banks, nor was there any evidence that in that state such power was necessary in the conduct of such business. It concurs in the investigation made by the Circuit Court of Appeals as to the absence of any such law in that state.

Accordingly, a reference to the opinion of the Circuit Court of Appeals [Sneeden v. City of Marion, supra, 64 F.(2d) 721, at page 725] shows that that court, after discussing the one decision, possibly applicable, states that it is not an "authorization" and that no "other Illinois case [has] been brought to our attention which authorizes such procedure. The question therefore comes to us without helpful precedent from that State."

It is therefore necessary, in view of the above, for this court to find out, so far as possible, what "the law" of the state of New York was in regard to the authorizing of banks organized under the laws of the state of New York to secure deposits of public money, bearing in mind that any statute authorizing the state directly to secure such deposits might not be sufficient, in and by itself, for implying the existence of such power in a political subdivision thereof.

It is conceded that there was no specific statute of New York state authorizing the supervisor of defendant town to secure a pledge of the character here involved, either that of August, 1932, or January, 1933.

However, it seems apparent, and in keeping with the plain intention of Congress, which sought to prevent the placing of national banks at a disadvantage with state banks, that the word "law" is not necessarily confined to the presence of a state statute. On the contrary, no such narrow limitation would suffice, however useful for decision of a court such would be, if it becomes reasonably plain that the "public policy" of the state authorized such procedure in the absence of a statute.

Somewhere it has been said, substantially, that the law lingers in the minds of the citizens a considerable time before there is sent down a precipitate of imperative words.

That this is so appears from the fact that in this state of New York the Legislature of the state provided in the New Town Law, § 64 (Laws 1933, c. 751, § 13, in effect January 1, 1934), that banks could give security in lieu of surety bonds to protect the deposit of town funds. McKinney's Consolidated Laws of New York Ann. Book 61, c. 62, Town Law.

While this statute is not applicable as express authority, for it comes after the

pledges here, and while it is restricted to the securing of deposits by state or national bonds, yet, it clearly indicates, together with the other instances of statutes, decisions, etc., to which reference will be made, the gradual enactment into statutory form of a practice according to the courts of the state, well recognized and prevailing, and certainly not in condemnation thereof.

■ To be sure the "imperative words of a statute" ends all inquiry such as this, but, in their absence, this court, in the search for what is "the law" of the state, may reasonably search for the "public policy," if any, of the state. Thus, it has been said "the public policy of the government is to be found in its statutes, and, when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials." U. S. v. Trans-Missouri Freight Association, 166 U. S. 290, page 345, 17 S. Ct. 540, 559, 41 L. Ed. 1007. Also see Logan & Bryan v. Postal Teleg. Co. (C. C. A.) 157 F. 570; Words and Phrases, First, Second, Third and Fourth Series, under Title, Public Policy. The Circuit Court of Appeals (7th Circuit) states: "We are not willing to foist it [the practice of pledging assets] upon the State of Illinois until its legislature or *its courts* have spoken clearly to that effect." (Italics mine.) Sneeden v. City of Marion, 64 F.(2d) 721, 727.

■ Naturally, this court also is disinclined to positively express, in the absence of a statute, or a decision of its highest court, what the law of the state of New York is or was.

The best that can be done, and that, in this case, seems sufficient, is to indicate what appears to be plainly the "public policy" of the state of New York, within the definition above set forth, bearing in mind that there was no express statute in 1932 and 1933 referring specifically to town supervisors, such as here sought the security and no decision of the Court of Appeals.

The recent decision of the Court of Appeals brought to my attention is that of the State Bank of Commerce v. Stone, 261 N. Y. 175, 184 N. E. 750, 87 A. L. R. 1449. The issue in this case of a state bank is confined to the right of a state bank to pledge its assets as security for *private deposits*. The Court of Appeals unanimously held that there was neither statutory nor implied authority to so pledge. Nor can

there be any further dispute as to this in this court. Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777.

However, and this is probably the reason why counsel for defendant town cites this state bank decision, Judge Crane (now Chief Judge) in expressing the opinion of the Court of Appeals makes the following observation at page 186 of 261 N. Y., 184 N. E. 750, 754: "Whatever doubt there may have been regarding the power of banks to secure the deposits of public moneys has been removed by statute. State Finance Law (Consol. Laws, c. 56), § 8; Laws 1909, c. 10, § 44; County Law, § 145, amended by Laws 1931, c. 419; Laws 1932, c. 97; and Greater New York Charter, § 196 [L. 1901, ch. 466], as amended by Laws 1917, c. 617. An act of the Legislature was evidently thought necessary, even as to public moneys, to enable banks to pledge certain securities for undertakings or deposits. Such were the last three enactments above mentioned. Matter of Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260."

It is plain therefore that the question now before me was not decided by this case. I am unable to point to this decision as determinative of the question here.

However, this citation, by Judge Crane, of the Carnegie Trust Company Case, 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260, decided in 1912, is not without significance. It will be noticed that he writes, in connection with his reference to the word "statute," the words "evidently thought necessary," and cites this Carnegie Case which does not relate to a statute but decides the right of the sovereign state of New York to a preference over other creditors where its public funds were on deposit with a state bank. The Court of Appeals in the Carnegie Case sums up the matter in the following words: "It was a public fund raised by taxation * * * and, inasmuch as the sovereign power of the King devolves upon the people, they have the right to have the public funds preferred over those of the common creditors." 206 N. Y. 390, page 399, 99 N. E. 1096, 1099, 46 L. R. A. (N. S.) 260.

Moreover, an examination of the record of this Carnegie Case, in the Appellate Division of the Supreme Court of the state, whose decision was thus affirmed by the Court of Appeals, 151 App. Div. 606, 136 N. Y. S. 466, discloses that this state bank

had given security for the deposit of these public funds in the form of surety bonds. Thus it is reasonable to assume this state bank had pledged its assets in order to secure such bonds which in turn were given as security for the deposits.

I have been unable to find any condemnation of this procedure in any subsequent decision of the Appellate courts.

We also have seen a long series of special statutes relating to counties, villages, and other political divisions of the state and various charters all authorizing the giving of security for public money deposited in state banks.

In justice therefore to a national bank in the state of New York engaged in competition with state banks, in the absence of any decision or statute forbidding same and in order to ascertain if there was, at the time in question, any such practice authorized by the courts of that state, we must search the decisions of the Supreme Court of the state of New York. Here we find such authority expressly stated.

■ On or about June 10, 1931, the state superintendent of banks applied to the Supreme Court "for instructions as to recognition of pledges for deposits of public funds." Matter of Broderick, 140 Misc. 861, 252 N. Y. S. 68.

The Supreme Court of the state expressly approved the pledge of security by a private bank of the state to secure deposits of public money. The court moreover states, "so far as there are legislative expressions, they indicate approval of this practice," and points to the various statutes already referred to.

The court then distinguishes between securing private deposits and securing deposits of public money stating that the two stand upon different basis, and concludes: "If the present practice of securing deposits of public moneys should be abused, equitable principles may be resorted to, according to the facts in particular cases, or, if these are not adequate, the Legislature may take action."

Again on January 30, 1932, only six months before the first pledge was made by this defendant bank, the Supreme Court of the state again expressly holds and decides that a state bank could pledge its assets to secure deposits of public funds by a *town supervisor*. Matter of Bank of Spencerport, 143 Misc. 196, 255 N. Y. S. 482, 484. This case appears to be on all

fours with the case before me. In this Spencerport Case the Supreme Court again distinguishes between pledges to secure private deposits and condemns this practice, but directly holds that the bank "had complete power, in the conduct of its business, to pledge securities to secure the deposit of public moneys."

The court discusses the increase in size of these tax funds, as towns grew, from comparatively insignificant sums, thus accounting for the slowness of statutory enactment. It finds the procedure to be one *generally followed,* and states that it does "not believe that this *general practice,* arising without legislative direction or prohibition, should be disturbed." It finally decides that "it would seem to be a matter of *public policy* growing up out of a *general practice* and undisturbed by the courts, as yet, for a bank to pledge its securities for the deposit of public funds." (Italics mine.)

So far as I have been able to find, neither of these particular decisions have been reversed or modified or are at variance with any other decision of a court. They not only assume to express the "law," but also make "findings of fact" that the pledging of assets by state banks to secure public funds was a "general practice."

Thus the directors here in control of the defendant bank would seem to have been amply justified in following such decisions of the Supreme Court of the state, for if state banks of the state were pursuing such approved "general practice" and no statute forbade same, a national bank in this state would certainly be at a disadvantage in securing deposits of public money, and under the Act of 1930 they were authorized to meet the state banks in such proper competition on an equality.

It is not for this court to discuss the advisability or inadvisability of such practice on the part of a bank. On the contrary, all it can do is to discover, if possible, what the law of the state was at the time the pledges were made. It seems to me that the state of the law or public policy of the state of New York in August, 1932, and in January, 1933, allowed the general practice of a state bank to pledge its assets as security for public money such as is here involved.

The important distinction between the facts of this case and the facts of the case arising in the state of Illinois (City of Marion v. Sneeden, supra) is now evident.

While there was no statute directly authorizing the practice here followed, there was likewise none directly or indirectly forbidding it.

Nor was there any decision of the highest court of the state determining the question here raised.

The weight of authority in the state therefore was directly, and by fair inference, in favor of such procedure.

Technically, the amount of securities mentioned in the pleadings and in the resolution of January 17, 1933, are the only amounts involved, but all the property transferred in pledge hang by a single cord, and, as they would seem to be incapable of being disputed, they have been considered.

Of course, the pledge is limited by the claim. Merrill v. National Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640. The pledgee can make no profit. Apparently, it has received a 50 per cent. dividend of approximately $240,000, and if more property remains in pledge than is necessary to reasonably pay the balance, that surplus should be promptly released for the benefit of others. These and other matters are not involved in the question of law here raised.

Under the above circumstances, the defendant town is entitled to judgment dismissing the complaint.

The complaint is dismissed.