## PYNE v. JACKMAN.

District Court, S. D. New York.
April 2, 1934.

Hardy, Stancliffe & Hardy, of New York City (By William F. McDermott, of New York City), for plaintiff.

Jacob J. Schwebel, of New York City (By Joshua S. Chinitz and Herman J. Tart, both of New York City), for defendant.

GODDARD, District Judge.

Plaintiff moves for a summary judgment pursuant to rule 113 of the Rules of the Civil Practice Act of the state of New York, and the defendant makes a cross-motion to dismiss the complaint under rule 113.

### Facts.

The action is brought by the receiver of the Pelham National Bank to recover the sum of $1,500, the amount assessed against the defendant by the Comptroller of the Currency of the United States under the provisions of the federal statutes, title 12 USCA § 51 et seq., which imposes a liability upon stockholders in a national bank for debts of the bank to the extent of the par value of the shares held in such bank by the stockholder. The complaint, after alleging the incorporation of the bank, the appointment of Warner Pyne, as receiver, and the determination of the Comptroller of the Currency assessing the stockholders of the bank, alleges that the defendant, within sixty days of the failure of the bank, was the owner of fifteen shares of the bank's capital stock of the par value of $100 each; and further alleges that the Pelham National Bank failed to meet its obligations on March 4, 1933.

Defendant in his answer denies that he was a stockholder of the Pelham National Bank within sixty days before the date of its failure to meet its obligations and denies that the bank failed to meet its obligations on March 4, 1933.

As an affirmative defense, the answer alleges that on January 17, 1933, more than sixty days prior to the failure of the Pelham National Bank to meet its obligations, the defendant, in good faith, and without any knowledge of the impending failure of said bank, for a valuable consideration, sold, transferred on the books of the bank, and assigned to one William J. Jackman the shares of stock then owned by defendant.

In an affidavit filed on plaintiff's motion, the plaintiff sets forth that the Pelham National Bank was closed on March 4, 1933, by reason of the proclamation of the Governor of the state of New York, and that on March 6, 1933, the President of the United States issued his proclamation closing all the banks of the United States and prohibiting all the banks from reopening without a license from the Comptroller of the Currency, and thereafter on March 21, 1933, a conservator was appointed for the bank who was in charge of its affairs until the appointment of the plaintiff as receiver on July 21, 1933. Plaintiff's affidavit also sets forth a quotation from circular letter No. CR–7 issued by the Comptroller of the Currency on June 9, 1933, "concerning the determination of the official date of closing of banks in conservatorship or receivership under banking holiday proclamation or acts," which reads as follows: "Where prior to the presidential proclamation a banking holiday proclamation or act was issued by the State in which the subject bank is located, and the bank immediately thereafter closed in pursuance of such State proclamation or act, such date of closing should be taken as the official date of closing, assuming such bank thereafter remained closed." There is also quoted in the moving affidavit an extract from a letter dated August 15, 1933, from the Comptroller of the Currency to plaintiff, which reads: "Therefore, you are advised that if the bank did not operate on an unrestricted basis after 8:15 A. M. March 4th (1933) March 3rd (1933) should be considered the date of suspension." Plaintiff's affidavit also alleges that the Pelham National Bank did not function on an unrestricted basis after March 3, 1933.

In an affidavit submitted by defendant in support of his motion, it is alleged that prior to March 4, 1933, the Pelham National Bank was a going concern, meeting its current obligations; that it remained closed from March 4 to March 21, 1933, in obedience to proclamations of the Governor of the state of New York and of the President of the United States, his executive orders and the acts of Congress enacted March 9, 1933; and that the said Pelham National Bank failed to meet its obligations, not because of its financial condition, but solely because of the general emergency proclamations and acts which applied universally to all banking institutions in this country; that it was not until March 21, 1933, when a conservator was appointed for the Pelham National Bank, that any direct action was taken by the Comptroller of the Currency with respect to the financial condition of the Pelham National Bank. Included in defendant's motion papers is a copy of the Executive Order of the President (No. 6073), dated March 10, 1933 (12 USCA § 95 note) which reads:

"The Secretary of the Treasury is authorized and empowered under such regulations as he may prescribe to permit any member bank of the Federal Reserve System and any other banking institution organized under the laws of the United States, to perform any or all of their usual banking functions, except as otherwise prohibited.

"The appropriate authority having immediate supervision of banking institutions in each State or any place subject to the jurisdiction of the United States is authorized and empowered under such regulations as such authority may prescribe to permit any banking institution in such State or place, other than banking institutions covered by the foregoing paragraph, to perform any or all of their usual banking functions, except as otherwise prohibited.

"All banks which are members of the Federal Reserve System, desiring to reopen for the performance of all usual and normal banking functions, except as otherwise prohibited, shall apply for a license therefor to the Secretary of the Treasury. Such application shall be filed immediately through the Federal Reserve Banks. The Federal Reserve Bank shall then transmit such applications to the Secretary of the Treasury. Licenses will be issued by the Federal Reserve Bank upon approval

of the Secretary of the Treasury. The Federal Reserve Banks are hereby designated as agents of the Secretary of the Treasury for the receiving of application and the issuance of licenses in his behalf and upon his instructions."

Plaintiff's affidavits state that the Pelham National Bank never received a license from the Secretary of the Treasury to reopen, although one was applied for.

Section 64, title 12 USCA, upon which this action is predicated, is as follows: "§ 64. *Individual Liability of Shareholders; Transfer of Shares.* The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

Plaintiff does not allege that defendant on January 17, 1933, knew or had reason to know of this impending failure of the bank to meet its obligations. Plaintiff's contention is that the failure of the Pelham National Bank to reopen after the bank holiday fixed the time of the failure of the bank as of March 3, 1933, pursuant to the ruling of the Comptroller of the Currency, and that the statutory period of sixty days should be figured from March 3, 1933, regardless of when the conservator or receiver was appointed. The defendant, on the other hand, contends that the failure of the Pelham National Bank to meet its obligations between March 4, and March 21, 1933, under such circumstances is not such a failure to meet obligations as Congress contemplated in fixing the individual liability of a stockholder of a national bank under section 84, title 12 USCA, and that there was no such failure to meet its obligations as contemplated by the statute until after March 21, 1933, the date of the appointment of the conservator.

Plaintiff does not base his right to recover on the ground that defendant knew or had reason to know of the impending failure of the bank to meet its obligations, but merely alleges defendant transferred his stock within sixty days of its failure, so that defendant, who transferred his stock on January 17, 1933, would be liable if the bank failed to meet its obligations on March 4, 1933, but not liable if that event occurred March 18, 1933, or thereafter.

It does not seem to me that March 4 can be assumed as the date when the bank failed "to meet its obligations" as contemplated by section 64 of the statute. It was closed then by a general proclamation closing all banks; not because it had failed to meet its obligations. The fact is that right up to the time the Pelham National Bank, as well as all other banks, were closed by the President's proclamation it was meeting its obligations. Between the period of March 4 and March 21, there was not such a failure to meet its obligations as to bring it within the intent of the statute. The proclamations prohibited all its depositors from pre-sending cheques for payment except those for payrolls, necessary food supplies, etc., and these were promptly met by the bank. And it was not until after the conservator was appointed on March 21 that such payments were stopped. Presumably then for the first time it was decided that the bank should not and probably could not continue to meet its obligations.

I think it could hardly be suggested that when the banks throughout the country closed on March 4 pursuant to the general proclamations, that there was such failure to meet their obligations as to hold the stockholders of the national banks liable under section 64 on the ground that the banks had failed to meet their respective obligations.

The plaintiff urges that if the Pelham National Bank was, on March 21, found by its conservator to be insolvent, and thereafter it remained closed, it must have been insolvent on March 4. This does not necessarily follow, for it is quite possible that during that period there was such a drop in the value of the securities owned by it that by March 21 it became insolvent. However, there is a genuine difference be-

tween "date of insolvency" and "date of the failure of such association to meet its obligations," which is the wording of section 64 in McDonald v. Chemical National Bank, 174 U. S. 610, at page 618, 19 S. Ct. 787, 790, 43 L. Ed. 1106: "It is matter of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods, though in a condition of actual insolvency, as disclosed by subsequent events."

The Congress in the National Banking Act has clearly indicated in sections 91, 161, 191, and 481, title 12 USCA that it recognized the distinction between the insolvency of a bank and failure to meet its obligations, and that they are quite different things. Such distinction is indicated in several sections of the statute and it is generally surmised that many banks which have not failed to meet their obligations were temporarily insolvent. Plaintiff urges that the circular letter No. CR–7 issued by the Comptroller of the Currency, quoted above, fixed March 3 as the date from which the sixty days should be computed in determining the liability of stockholders.

I do not think that this could or was intended to be a judicial determination of or to effect the legal status of a stockholder under section 64, but was intended as merely the date as of which the rights of the depositors of such a bank were to be adjusted.

No case has been cited by counsel, and I have not found any which throw much light on the question now presented. The plaintiff has cited a decision of Judge Letts of the Supreme Court of the District of Columbia in Daly Bros., Inc., v. Hickman et al., Washington Law Reporter, vol. LXI, p. 802, but that case raised a different question of law. There, the question was whether what was done after the bank was closed and in violation of the presidential proclamation affected the status of a depositor of the bank as a general creditor, and it was held that it could not change his rights. Here we are concerned with the liability of a stockholder under section 64, and the judicial determination of the actual date when the bank failed to meet its obligations.

It follows that the plaintiff's motion for judgment should be denied, and that the defendant's motion to dismiss the complaint should be granted. However, I understand that the plaintiff wishes an opportunity to amend his complaint. Accordingly, plaintiff's motion for judgment is denied, and defendant's motion is granted unless within twenty days plaintiff serves and files an amended complaint.

Settle order on notice.