## SCHRAM v. CLAIR et al.

### No. 7974.

District Court, E. D. New York.

July 17, 1939.

F. R. Serri, of Brooklyn, N. Y. (Robert S. Marx, of Cincinnati, Ohio, of counsel), for plaintiff.

Epstein & Brothers, of New York City, for defendant William H. Suydam.

GALSTON, District Judge.

Cross motions are made for summary judgment.

The complaint alleges that the First National Bank—Detroit closed its doors on February 11, 1933, and did not thereafter resume the conduct of normal banking business; that on March 13, 1933, the Comptroller of the Currency, pursuant to authority of the act of Congress known as the Bank Conservation Act, 12 U.S.C.A. §§ 201–211, having found that said First National Bank—Detroit was unable to carry on its ordinary business without prejudice to the rights of depositors or other creditors, appointed a conservator, and that the bank remained in exclusive possession and control of a conservator until May 11, 1933, on which day the Comptroller of the Currency, "having found and declared said First National Bank—Detroit to be insolvent and unable to pay its just and legal debts", appointed a receiver.

It is alleged that at the time of the failure of the bank the defendants were record owners of a number of shares of the capital stock of Detroit Bankers Company, which company had acquired shares of stock of a number of banks, among them the First National Bank—Detroit, under a plan whereby the holders of the common stock of the Detroit Bankers Company assumed any statutory liability imposed upon that corporation arising out of the ownership of bank stock.

It is also alleged that on May 10, 1933, the Detroit Bankers Company being hopelessly insolvent was voluntarily dissolved pursuant to a decree of the Circuit Court for the County of Wayne, Michigan. Thereafter, on May 16, 1933, the Comptroller of the Currency determined that it was necessary to enforce the individual liability of the stockholders of the First National Bank—Detroit, as provided by statute. Pursuant to the authority vested in him he levied an assessment upon the shareholders of the First National Bank—Detroit for $25,000,000, and made demand upon each shareholder for the par value of each and every share of capital stock of the bank held at the time of the failure of the bank. The defendants failed and refused to make payment in accordance with the demand of the receiver.

It does not appear that the defendant Florence R. Clair was served. The defendant Suydam answered the complaint, denying material allegations thereof and alleging a number of separate defenses, the first of which sets forth that on or about February 21, 1933 and more than sixty days next before the date of the failure of the First National Bank—Detroit to meet its obligations, the defendant Suydam transferred to one Morris Weil 230 shares of common stock of the Detroit Bankers Company theretofore standing in the name of the defendant in the books of said company. A second defense alleges that the Comptroller levied an assessment on the aforesaid Weil upon the same 230 shares of common stock and that in consequence this action is prematurely brought against the defendant. A third defense alleges that the plan in respect to the assumption of statutory liability provided for in the articles of association of the Detroit Bankers Company is void as against public policy and contrary to the statutes of the United States pertaining to individual liability of shareholders of national banking associations. A fourth defense alleges that Suydam at no time executed any instrument binding himself to the obligation imposed in Article 9–A of the articles of association hereinbefore referred to. The fifth and final defense alleges that on February 11 and at all times prior to the appointment of a receiver for the First National Bank—Detroit the bank was fully solvent and that if it is now insolvent it is because of certain alleged illegal and improper acts of the Governor of the State of Michigan in declaring state banking holidays, which acts were beyond the powers vested in the Governor of the State of Michigan, and by the illegal acts of the President of the United States in declaring national bank holidays, and by the improper and illegal appointment of a conservator of the First National Bank—Detroit.

Rule 56, subdivision C, of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that the judgment sought shall be rendered forthwith "if the pleadings, depositions * * * together with the affidavits * * * show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Title 12, U.S.Code, Sec. 64, 12 U.S.C.A. § 64, sets forth the individual liability of shareholders and provides in part: "The stockholders of every national banking association shall be held individually responsible * * * each to the amount of

his stock therein * * *. The stockholders in any national banking association who shall have transferred their shares * * * within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer,"

The basic question presented in these motions is the determination of the date of the failure of the First National Bank—Detroit to meet its obligations.

The plaintiff contends that March 13, 1933, when the conservator was appointed, marks the day of the bank's failure; the defendant, on the other hand, alleges that the date of such failure was found to be May 11, 1933, when the receiver of the bank was appointed.

The plaintiff cites decision in the United States District Court for the Eastern District of Michigan, Southern Division, Case no. 6525, Jules S. Bache, et al. v. B. C. Schram, Receiver of the First National Bank—Detroit, [1] wherein it was found that the First National Bank—Detroit failed to meet its obligations on February 14, 1933 and at all times thereafter, and that in the case of Barbour v. Thomas, D.C., 7 F. Supp. 271, the court in its findings of fact concluded that the First National Bank—Detroit did not re-open its doors for the transaction of a regular and normal banking business after the close of business at twelve o'clock noon on February 11, 1933.

Certainly the defendant herein cannot be bound by either of those decrees or judgments because he was not a party thereto. Moreover, on the submission of this case on the pleadings and the affidavits in support of the motions, the difference in findings in the two cases referred to must be noted; for in the former February 14, 1933, was established as the date of failure of the bank to meet its obligations, whereas in the latter February 11, 1933, is referred to as the time that it failed to re-open its doors for the transaction of a regular and normal banking business.

It is conceded that the bank remained closed between February 11 and March 21, 1933, pursuant to proclamations of the Governor of the State of Michigan and the President of the United States; but such closings of the bank under the holiday proclamations do not fix the date of the failure of the bank to meet its obligations. Pyne v. Jackman, D.C., 12 F.Supp. 653.

What was the significance of the appointment of a conservator? Chap. 1, Title 2, Sec. 203 of the Public Laws of the 73rd Congress, March 9, 1933, 12 U.S.C.A. § 203, recited that "Whenever he shall deem it necessary in order to conserve the assets of any bank for the benefit of the depositors and other creditors thereof, the Comptroller of the Currency may appoint a conservator for such bank. * * * Such conservator shall have all the rights, powers, and privileges now possessed by or hereafter given receivers of insolvent national banks *. * * ."

It is not stated in that act that the appointment of a conservator amounts to a determination that the bank has failed to meet its obligations. Indeed the provisions of the act make it possible for the Comptroller of the Currency to terminate the conservatorship and permit the bank to resume the transaction of its business subject to such terms, conditions, restrictions and limitations as he may prescribe.

There is certainly not enough either in the pleadings or in the affidavits presented in support thereof to enable a present determination to be made that the First National Bank—Detroit on the day that the conservator was appointed was unable to meet its obligations. The most that can be inferred is that the condition of the bank as known to the Comptroller of the Currency at that time led him to believe that the assets required conservation. So much indeed is alleged in the complaint. It is there asserted that on March 13, 1933, the Comptroller of the Currency, "having found that said First National Bank—Detroit was unable to transact and carry on its ordinary banking business or exercise its usual banking functions without prejudice to the rights of depositors and other creditors", appointed a conservator, and then further alleges that "on the 11th day of May, 1933 the Comptroller of the Currency, having found and declared the said First National Bank to be insolvent and unable to pay its just and legal debts and obligations" appointed a receiver. The difference in phrase is significant. On March 13, 1933, it is to be noted that the finding of the Comptroller was that the bank was unable to "transact and carry on its ordinary banking business * * * without

---

[1] No opinion for publication.

prejudice to the rights of depositors and other creditors". That is quite a different thing from the later statement that on May 11, 1933, the Comptroller found the bank to be insolvent and unable to pay its just and legal debts and obligations.

The issue of fact, therefore, cannot be resolved on this motion and accordingly both motions for summary judgment are denied. Plaintiff, however, correctly moves with respect to certain of the separate defenses of the answer. The second separate defense, alleging that this suit is prematurely brought against Suydam because the Comptroller has also levied an assessment on his assignee, Weil, is not supported by any suggested authority. This defense should be stricken. The third separate defense, alleging that Article 9-A of the articles of association of the Detroit Bankers Company is void and contrary to public policy and contrary to the law of the State of Michigan and to the statutes of the United States, is without any show of merit and should be stricken, and the same is true of the fifth separate defense.

Settle orders on notice.