STATE BANK OF COMMERCE OF BROCKPORT, NEW YORK, by JOSEPH A. BRODERICK, as Superintendent of Banks, Appellant, v. HOWARD G. STONE, as Treasurer of the Farm Department of the Monroe County Farm and Home Bureau Association, Respondent.

176

(Argued January 24, 1933; decided February 28, 1933.)

*Harlan W. Rippey* and *Harold G. Hutchens* for appellant. The undertaking given and the pledge of the bonds by the plaintiff bank was *ultra vires* and, as such, could not be ratified and made a valid transaction by any subsequent action of the bank. (*Nassau Bank* v. *Jones*, 95 N. Y. 115; *National Park Bank* v. *G. A. M. W. & S. Co.*, 116 N. Y. 281; *Cola Nat. Bank* v. *United States*, 167 U. S. 362; *Gause* v. *Commonwealth Trust Co.*, 196 N. Y. 134; *F. & M. State Bank* v. *Common School District*, 134 Minn. 286; *Commercial Bank* v. *Citizens Trust Co.*, 153 Ky. 566; *Jemison* v. *C. S. Bank*, 122 N. Y. 135; *Wilson* v. *Kings County Elevated R. R. Co.*, 114 N. Y. 487; *Life Association of America* v. *Rundell*, 103 U. S. 22; *People ex rel. Tiffany & Co.* v. *Campbell*, 144 N. Y. 166; *Baltimore & Ohio R. R. Co.* v. *Smith*, 56 Fed. Rep. [2d] 799; *Tennessee* v. *State*, 50 How. Pr. 447; *Central Transportation Co.* v. *Pullman Car Co.*, 139 U. S. 24.) The president and vice-president of the bank had no authority to execute the undertaking or to pledge and deliver the bonds. (*Gause* v. *Commonwealth Trust Co.*, 196 N. Y. 134; *Broadway Theatre Co.* v. *Dissau Co.*, 45 App. Div. 475.) There was no consideration for the undertaking and no benefit derived by the bank from the transaction and consequently

there was no estoppel. (*American Surety Co.* v. *Philippine Nat. Bank*, 245 N. Y. 116; *Appleton* v. *Citizens Nat. Bank*, 190 N. Y. 417; 216 U. S. 196; *Oklahoma City Nat. Bank* v. *Ezzard*, 58 Okla. 251; *First Nat. Bank* v. *Mott Iron Works*, 258 U. S. 240; *U. S. Fidelity Co.* v. *First State Bank*, 160 Miss. 239; *Norton* v. *First Nat. Bank*, 61 N. H. 58; *Peoples Bank* v. *Managers Nat. Bank*, 101 U. S. 181; *Thomas* v. *City Nat. Bank*, 40 Nev. 501; *Gause* v. *Commonwealth Trust Co.*, 196 N. Y. 134; *Shipman* v. *Bank of New York*, 126 N. Y. 318; *Cassidy* v. *Ulman*, 170 N. Y. 505; *Kellogg* v. *Olmstead*, 125 N. Y. 189.)

*Earl F. Case* for respondent. The transaction was not *ultra vires*. (*Smith* v. *Lansing*, 22 N. Y. 520; *Matter of Spencerport Bank*, 255 N. Y. Supp. 482; *Matter of Jayne & Mason Bank*, 252 N. Y. Supp. 68; *Matter of McCarthy*, 139 Misc. Rep. 149; *American Surety Co.* v. *Philippine Nat. Bank*, 245 N. Y. 116.) The transaction was entered into with the knowledge and consent of the board of directors by their executive and finance committee and they are bound thereby. (*National F. Co.* v. *Spiegelman Co.*, 189 N. Y. Supp. 449; 190 N. Y. Supp. 831; *Quackenboss* v. *Globe & Rutgers F. Ins. Co.*, 177 N. Y. 71; *Gause* v. *Commonwealth Trust Co.*, 124 App. Div. 438; 196 N. Y. 134; *Logan* v. *Fidelity-Phœnix F. I. Co.*, 161 App. Div. 404; 220 N. Y. 688; *Jourdan* v. *L. I. R. R. Co.*, 115 N. Y. 380; *Trustees of Canandaigua* v. *McKechnie*, 90 N. Y. 618; *Lyon* v. *West Side T. Co.*, 132 App. Div. 777; *Rathbun* v. *Snow*, 123 N. Y. 349; *Ernst* v. *Cary Safe Co.*, 113 Misc. Rep. 620.) The bank or its liquidator cannot keep the deposit which it secured by reason of the contract and repudiate the contract. It is estoppel from doing so. (*American Surety Co.* v. *Philippine Nat. Bank*, 245 N. Y. 116; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Albreck* v. *Chemical Nat. Bank*, 176 U. S. 618; *Western Nat. Bank* v. *Armstrong*, 152 U. S. 346; *Bushnell* v. *Chautauqua Nat. Bank*, 10 Hun, 378; *Dencomb* v. *N. Y. C. & H. R. R. R. Co.*, 184 N. Y. 190; *Smith* v. *Lansing*, 22 N. Y. 520.)

CRANE, J.   This appeal, by leave of the Appellate Division, brings up for review a question which in recent years has been growing in importance with the development of the banking business throughout the country, and which has finally resulted in the expression of very firm and sound views by the highest courts, although the point is here now for the first time in this court.   May a bank, to retain or obtain general deposits of private funds, pledge its assets for the security of such deposits?   The facts of this particular case are the following.

This action was brought to recover possession of fifteen bonds of $1,000 each, owned by the State Bank of Commerce of Brockport, New York, and transferred to the defendant on October 2, 1931, as collateral security for deposits of the defendant at the bank, then amounting to the sum of $5,638.84.   The defendant is the treasurer of the Farm Department of the Monroe County Farm and Home Bureau Association, formed, pursuant to subdivision 28-a of section 12 of the County Law (Cons. Laws, ch. 11; amd. L. 1924, ch. 248).   This association is for the improvement of agricultural and home conditions and to conduct demonstration work in agricultural and home economics.   Its work is carried on under the direction of Cornell University.   Part of its funds are furnished through the State College of Agriculture; other sums are received from the Federal government, and dues of five dollars a year, from its membership, open to the public. The budget of its receipts and expenditures is approved by Cornell University.   It is not a municipal corporation. (General Corp. Law; Cons. Laws, ch. 23, § 3, subd. 1.)

On or about October 2, 1931, the defendant had on deposit with the State Bank of Commerce of Brockport, New York, $2,228.71, and after that date deposited additional moneys to the amount of $2,915.   To retain this deposit and to obtain the additional money the bank, through its executive committee, of less than the required

number, executed a contract to secure the sum, and there-
after delivered to the defendant $10,000 Goodyear Tire
and Rubber Company first mortgage and collateral trust
five per cent bonds due May 1, 1957, with May 1, 1932, and
future coupons attached; $5,000 Missouri Pacific Railroad
Company first and refunding mortgage five per cent gold
bond, Series F, due March 1, 1977, with March 1, 1932,
and future coupons attached.

The bank having become insolvent, the Superintendent
took possession on December 16, 1931, at which time the
above stated amounts were on deposit with the bank, and
passed into the hands of the liquidator. The Superin-
tendent of Banks brought this action to recover the bonds,
as having been transferred and pledged with the defendant,
contrary to law. There is no statute requiring or auth-
orizing such a disposition of bank assets.

At the close of the trial the Special Term ordered that
the possession of the bonds be delivered to the Superin-
tendent of Banks, upon his depositing with the Central
Trust Company of Rochester, New York, in place of the
bonds, the sum of $6,000 to the credit of the defendant,
and subject to the further order of the court. Later, an
order was made that the trust company pay to the defend-
ant $4,000, on or after August 15, 1932. The judgment
of the Special Term, made August 3, 1932, dismissed the
complaint upon the merits, and directed the payment of
the balance of the $6,000 fund to the defendant. The
appeal to this court is from this judgment and the previous
order, by leave of the Appellate Division, which affirmed
both.

The objections which have been made to the pledging
of a bank's assets to secure deposits are, *first*, that it
gives extra, secret protection to the secured depositor at
the expense of the unsecured; and, *second*, that the bank
invites the public to deposit moneys upon a misrepresen-
tation of its financial condition, as its published periodical
statements contain no mention of these secret withdrawals
of its assets.

Whatever confusion there may have been in the decisions of the courts bearing upon this question has been due very largely to the treatment of deposits as if they were loans. The distinction has not always been recognized. That banks, incorporated under our banking laws, have the capacity to borrow money, as incidental to the banking business, and the powers expressly granted, has long been established. To do so, they necessarily must give security to obtain the loans. (*Curtis* v. *Leavitt*, 15 N. Y. 1, 52; *Auten* v. *United States Nat. Bank*, 174 U. S. 125.) But even in *Curtis* v. *Leavitt*, decided in 1857, the court recognized the possibility of a distinction between a deposit and a loan. As COMSTOCK, J., in the prevailing opinion, said: " A general deposit in a bank, in its exact legal result, is a loan of money (*Chapman* v. *White*, 2 Seld. 412); yet it may be true, as my learned associate, Judge SELDEN, thinks, that a power to receive deposits is not a power to borrow money in the more general and appropriate sense of those words."

The recent case of *Farmers & Merchants State Bank of Ogilvie* v. *Consolidated School District* (174 Minn. 286 [April, 1928]), in opinion by STONE, J., has made the distinction very clear in deciding that a bank has no power to pledge any of its assets to secure the repayment of general deposits, except as authorized by statute regarding State and municipal funds. Referring to the earlier decisions which held that a deposit was simply a loan of money and that the power to borrow money carries the power to secure its payment by collateral, the opinion states: " The essential premise of that opinion is that with respect to the power to give security bank deposits and bank borrowings are alike. That seems to us unsound. Bank deposits and bank borrowings are alike in but the one respect that one result of each is the relation of debtor and creditor. In every other respect the two operations are not only different but in complete antithesis. Deposits are attracted by the strength of

a bank, whereas its borrowings are compelled by weakness or other adverse circumstance. (The borrowing of money has been said to be ' so much out of the course of ordinary and legitimate banking as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money.' *Western Nat. Bank* v. *Armstrong*, 152 U. S. 346.) Large deposits signify health, and large borrowings banking disease. Springing from opposite causes, the two by their existence signify opposite conditions — deposits the normal, and borrowings the abnormal. Moreover the antithesis holds to the end, for the withdrawal of a deposit is a loss, whereas the payment of a loan is a gain. Deposits continued and increased evidence banking success, whereas borrowings continued and increased portend failure. Save in the relation of debtor and creditor common to both, the two are different in their every incident — not only different but opposed in origin, in purpose, and in effect. How it comes then that the obvious truth that a bank may pledge collateral for borrowed money can be used to sustain the same power in the case of deposits we cannot understand. The former is clearly necessary, usual and incidental, whereas the latter is neither necessary, usual or incidental, but is positively dangerous " (pp. 291, 292).

As dealing with the question of the power to pledge assets for deposits, the opinion further states views which we quote because of their succinctness and sound reasoning: " At the outset it [pledge of assets] evinces a willingness to favor the secured depositor at the expense of those less favored. Then it actually sets apart for his exclusive benefit part of a fund to no part of which he should have any such right, and in every part of which the other depositors should have the same right as himself. It is in derogation of that fair and equal treatment of all depositors which is fundamental in the ethics of banking. A conclusive test is that no bank can make a practice of

securing deposits by pledging assets and live. A few such transactions made known to its clientéle would put any bank out of business. The practice would properly be taken to show that the institution was intrinsically so little deserving of deposits that resort to the too attractive lure of collateral was compelled by adverse circumstances. * * * So, if the practice of securing deposits by pledge of assets is resorted to at all, it must be done secretly. That is enough to condemn it. Any power the exercise of which will not stand the light of publicity cannot be allowed to banks " (pp. 289, 290).

The Supreme Court of Minnesota had the support of two previous cases cited in all the discussions upon this subject. (*Commercial Banking & Trust Co.* v. *Citizens Trust & Guaranty Co.*, 153 Ky. 566, and *Divide County* v. *Baird*, 55 N. D. 45.) The statutes of Kentucky permitted banks to exercise such powers as may be necessary to carry on the business of banking, using phraseology similar to our own Banking Law (Cons. Laws, ch. 2), section 106. In deciding that its State banks had no express or implied power to secure the payment of a depositor by the pledging of its assets, the Court of Appeals of Kentucky said: " This is clearly an act *ultra vires* and unlawful. No such power has been conferred upon banks in this State, nor should authority to do so be granted anywhere. * * * Large depositors, if secured, might absorb the greater part of the assets of the bank and inflict loss upon unsecured depositors and financial ruin upon innocent stockholders under the double liability law. The law [Banking Law] contemplates, and was evidently framed to insure, fair and uniform dealings by the banks with all of their depositors. A secret pledge to secure one, while others are left without security, although it may be without specific intent to defraud, would nevertheless, in case of loss, justify such an inference. Public policy will not, therefore, tolerate a practice which might, sooner or later, in the event of

finding trouble with the bank, enable it to pay and protect the favored few at the expense of the equally deserving many. \* \* \* Banks publish statements of their assets, and individuals deposit on the faith of these published statements. It is well known that good statements as to assets induce people to deposit their money in banks making such statements. It would be a crowning act of injustice to hold that deposits, thus induced, are nevertheless cut off from sharing in these assets, until some unknown favored few, who have been secretly secured, are satisfied; and it would be a palpable fraud on the part of a bank thus to procure deposits, when its assets were secretly pledged. \* \* \* The aim and trend of all modern legislation on the subject of banks has been to protect the depositor " (pp. 572, 573, 574, 577).

The Supreme Court of North Dakota in the case above cited came to the same conclusion, adding to the views above expressed the following: " It must be obvious that the banking laws now in force and the forms used and the practice followed in making and publishing reports on the condition of state banks, all approved by the State Banking Department, are as clearly calculated to deceive the public, as to the condition of the bank, as if they had been deliberately adopted for that very purpose, if the contention be sound that its bills receivable may be pledged to secure a general deposit. If the power exist, it is without limit or qualification in the statutes; and there is no requirement, legal or administrative, which removes the mantle of absolute secrecy from the transaction. The bank could — as every business man knows has been done on occasion — make the pledge agreement, keep the assets in its possession, and execute its receipt therefor to the favored depositor, all without a trace on the records of the corporation showing the transaction which actually took place " (p. 56).

To the same effect see also *Arkansas-Louisiana High-*

*way Improvement District* v. *Taylor* (177 Ark. 440 [May, 1928]); *Foster* v. *City of Longview* (26 S. W. Rep. [2d] 1059 [April, 1930]); *Bliss* v. *Pathfinder Irrigation District* (122 Neb. 203 [Jan. 1932]); *Porter* v. *Canyon County Farmers' Mut. Fire Ins. Co.* (45 Ida. 522); *Schornick* v. *Butler* ([Ind.] 172 N. E. Rep. 181).

We now come to the Federal courts and have before us *Baltimore & Ohio R. R. Co.* v. *Smith* (56 Fed. Rep. [2d] 799), decided in March of 1932 by the Circuit Court of Appeals, Third Circuit. The Revised Statutes of the United States, paragraph 7 of section 5136 (12 U. S. C. A. title 12, § 24, ¶ 7) clothe national banks with the following powers: " To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this chapter."

This is the exact language of the Banking Law of this State, section 106, subdivision 1, with the exception that by our law, money may be loaned on real as well as personal security, and that the issuing and circulating of notes is omitted. The court held that there was no implied power in a Federal bank to pledge part of its assets as security for private deposits, and said: " Power is thus given to conduct a banking business and all incidental power necessary to carry it on. * * * Is the power to pledge a bank's property to secure private deposits necessary to carry on the business of banking? There is no evidence showing that it is necessary. On the other hand, inference is fairly reasonable that thousands of successful banks have never exercised such power " (p. 801).

Referring to the various acts of Congress requiring

security for the deposit of *public* money, such as the postal savings, moneys deposited by receivers, State moneys or moneys of any political subdivision of a State or of Indian moneys, the court said: " In none of these acts is any mention whatever made of the power to pledge assets to secure private deposits. If Congress had intended to give such power to national banks, it would have expressly indicated such intention. The fact that it did authorize national banks to pledge their property to secure public deposits, but was silent as to private deposits, clearly indicates that it did not intend to give that power in the case of private deposits " (p. 802).

The force of this authority in our court is drawn from the interpretation of the Federal Banking Law, which is exactly our own in this particular. Under it, there is no implied authority drawn from the custom of banks to pledge assets for private deposits.

The few authorities which may seem to tend to an opposite conclusion have special features which distinguish them, or else have not been followed in the recent trend of authorities. *Leonard Co-operative Creamery Assn.* v. *First State Bank* (168 Minn. 28) was decided before *Farmers & Merchants State Bank of Ogilvie* v. *Consolidated School District* (174 Minn. 286), above quoted. *Ward* v. *Johnson* (95 Ill. 215) treated the money as if it were a loan. *Ahl* v. *Rhoads* (84 Penn. St. 319) fails to discuss this point, and *Citizens State Bank* v. *First Nat. Bank* (98 Kan. 109) dealt with a pledge authorized by statute.

The prevailing view that banks are unauthorized in the absence of statute to secure private deposits by a pledge of assets has received favorable comment in the law reviews. (See 45 Law Rep. Anno. [N. S.] 950; 77 Univ. of Penn. Law Rev. 916; 79 Univ. of Penn. Law Rev. 608; 41 Yale Law Journal, 1076; 22 Ill. Law Rev. 449.)

We share these opinions expressed by the highest courts of other States from which we have so copiously quoted.

Reason as well as authority indicates that a bank has no implied power to pledge its assets as security for private deposits. To open the door to such a practice would permit officers and directors to favor their relatives and friends, submitting our entire banking system to justifiable suspicion. Faith in the honesty and integrity, impartiality and fairness of our banks is the backbone of credit and the strength of commercial enterprise.

Whatever doubt there may have been regarding the power of banks to secure the deposits of *public* moneys has been removed by statute. (State Finance Law; Cons. Laws, ch. 56, § 8; L. 1909, ch. 10, § 44; County Law, § 145; L. 1931, ch. 419; L. 1932, ch. 97; and Greater New York Charter, § 196; L. 1901, ch. 466, amd. L. 1917, ch. 617.) An act of the Legislature was evidently thought necessary, even as to public moneys, to enable banks to pledge certain securities for undertakings or deposits. Such were the last three enactments above mentioned. (*Matter of Carnegie Trust Co.*, 206 N. Y. 390.)

This leads to the conclusion that the agreement made by the State Bank of Commerce of Brockport, New York, with the defendant, and the pledge of $15,000 in bonds to secure a $5,000 deposit was contrary to law and beyond the power and authority vested in the officers of the bank.

This does not necessarily mean, however, that the judgment of the courts below must be reversed, as we have to consider the effect of *ultra vires*. In pledging these bonds, the officers were acting for and on behalf of the bank, and for its business, apparently seeking to obtain deposits which, under the Banking Law, it was authorized to receive. They applied the deposits to the bank's business and the bank has had and received the benefit of the money due to the agreement which the bank made, and the bonds which it delivered as security. Under these circumstances it would not be just for the bank or its creditors to accept all the benefits and repudiate the burdens, unless the acts of the bank be in violation of

some direct and positive statute. Whatever the difference of view there may be as to the effect of *ultra vires* on corporate contracts, in no jurisdiction can a party retain what it has received under such a contract and refuse to perform the contract. (*Appleton* v. *Citizens' Central Nat. Bank,* 190 N. Y. 417; *American Surety Co.* v. *Philippine Nat. Bank,* 245 N. Y. 116, where the authorities in this State are reviewed.)

The judgment and orders below must, therefore, be affirmed to the extent in which they have required the defendant to return the pledged bonds upon the repayment of the deposited money, with interest. This is the effect of the order and the judgment appealed from, and we do not understand that they go any further.

One word, however, remains to be said regarding the effect of this decision, which is stated to be a test case. By no means do we hold that although banks have no implied authority to pledge their securities for private deposits, yet after the thing is done it cannot be undone. In this particular case the bank became insolvent and was taken over by the Superintendent of Banks. His duties, however, do not begin with insolvency. Our Banking Law has many provisions seeking to preserve the solvency of banks, and secure depositors. Thus, section 39 makes it the duty of the Superintendent to examine banks twice a year. " On every such examination inquiry shall be made as to the condition and resources of such corporation, banker or broker, the mode of conducting and managing its affairs, the actions of its directors or trustees if a corporation, the investment of its funds, the safety and prudence of its management, the security afforded to those by whom its engagements are held, and whether the requirements of its charter and of law have been complied with in the administration of its affairs; and as to such other matters as the superintendent may prescribe."

Section 56 prescribes: " Whenever it shall appear to

the superintendent that any corporation * * * has violated its charter or any law, or is conducting its business in an unauthorized or unsafe manner, he may issue an order directing the discontinuance of such unauthorized or unsafe practices," and in case of its failure to comply, he is authorized by section 57 to take possession of the business.

The Superintendent, therefore, is not compelled to wait until insolvency to interfere with the pledging of a bank's securities for private deposits. It is his duty to ascertain the facts and in such manner as to him seems advisable, and at such time as comports with the necessity of the occasion, compel banks to again retake their assets, if so pledged, upon the return of the deposits, when demanded.

The judgment should be affirmed, with costs.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment affirmed.