Conn, J.
In this case the parties having waived a trial by jury, the issues in the case have been submitted to the court on the pleadings, the evidence adduced in support thereof, oral arguments and briefs of counsel. It satisfactorily appears that the Board of Stewards of the Ohio Conference of the Methodist Episcopal Church is vested with the duty of administering certain funds for the benefit of the aged and retired ministers of said church, and the widows and children of deceased ministers, and was so vested at the time of the transactions involved in this case. That in September 1929 said Board of Stewards arranged with the Commercial Bank & Savings Company of this city to make a deposit therein of certain of its funds, and shortly there *154 after a deposit of $45,612.19 was made in said bank to the credit of said Board of Stewards and entered on the ledger sheet of said bank as a regular checking account. The arrangement entered into included the payment of five per cent, interest on all funds left in the bank three months and more, and further provided that certain securities be deposited with said Board, and thereupon the Board of Directors of said bank regularly voted to set apart and pledge to said Board of Stewards certain notes and first mortgages aggregating $27,900. Among the securities pledged was the note and mortgage of the defendant Guy F. Dean to which the plaintiff in this action asserts ownership and prays that the same be foreclosed. The securities set apart and pledged by the bank were delivered to said Board of Stewards at the time the deposit of said funds was made. Checks were drawn against said deposit from time to time leaving a balance in said bank on the date that the superintendent of banks took charge thereof, to wit: November 29, 1929, including interest, of $23,684.-92. Subsequently said Board of Stewards foreclosed one of the mortgage securities in its possession, and the proceeds of the sale were credited with a five per cent, dividend, leaving a balance due said Board of $15,272.91 at the time plaintiff filed his petition in this case.
Well prepared briefs have been submitted by counsel. We have carefully studied the briefs and examined the authorities cited, and wish to set forth briefly the conclusions we have reached.
The pledging of assets of a bank to secure one depositor to the exclusion of others has resulted in much litigation and considerable diversity in judicial opinion. This difference of opinion is accounted for in part by reason of the variation in the terms and provisions of the statutes involved, but some diversity may be attributed to the application of general rules of law in the light of varying economic conditions. The issues raised by the pleadings in this case are related in the first instance to the power and authority of a bank, under the Ohio statutes, to enter into an agreement whereby it pledges certain of its assets to secure a general deposit of private funds. The cases cited by counsel, the Montgomery county case, Ohio ex rel *155 Fulton v. Wolf, and the Mahoning county case, Superintendent of Banks v. Republic Steel Corporation, are each sound in law, but on account of the important differences in the facts from the case at bar, cannot be considered decisive. We have found no case in the reviewing courts, and none has been cited, where the question now before us was under consideration.
Outside of Ohio the courts are divided, as pointed out by counsel for plaintiff, but the decided weight of authority is against the right of a bank to use its assets as collateral security for private funds deposited with it, in the absence of express statutory provisions. Banks have only such powers as are expressly conferred, or as are incidentally necessary to effectuate their express powers. Yol. 5 Ohio Jurisprudence 363-364. Sec. 73. An examination of the Ohio statutes discloses no express power given a bank to pledge assets to secure deposits of private funds. If such power exists it must be implied. It is a general rule that implied powers are only such as are reasonably necessary in the conduct of the authorized business of a bank. Such powers are merely incidental to those expressly given. The power to pledge assets to secure the deposits of private funds cannot be said to be necessary in the conduct of a bank. If such pledges were made and the fact became known, the stability and safety of the bank would be imperiled. In any case where it is considered necessary and proper in the conduct of the business of a bank to obtain a deposit by means of collateral security, methods should be employed other than the taking of assets which the law contemplates are for the protection of all depositors.
The primary purpose of the bank is to furnish a safe depository for all persons who avail themselves of the facilities provided for that purpose. This primary purpose is evidenced by the varied provisions of the statutes setting up safeguards about it. The provisions of the banking code, many of which are in mandatory form, reveal the legislative will and purpose to make secure the business of banking, and wherever the legislative intention appears, the court will construe an enactment to effectuate it.
It is contended, however, on behalf of the Board of Stewards, that under the express terms and conditions at *156 taching to the deposit made by said Board, that such deposit was not considered and regarded as a general deposit, but rather as a loan. This is an important consideration. By express authority of the statute, banks of Ohio may borrow money, and the grant of such power carries with it the incidental right to give security for the money so borrowed. We have carefully examined the testimony adduced in this case touching this question and we have reached the conclusion that the transaction between the bank and said board of stewards did riot constitute a loan. The question is largely one of fact, and to determine the question in any case the facts must be carefully scrutinized. So far as our investigation has gone, it appears that no one as yet has formulated a sufficient or satisfactory definition of what constitutes a loan, or what constitutes a general deposit. In legal contemplation there are certain characteristics common to both, for example, each creates the relationship of debtor and creditor. In this case the agreement provided that the bank should pay interest on so much of the fund deposited as remained with the bank three months or more, but the paying of interest is not in itself a criterion for a loan.
We feel, as stated above, that on the evidence adduced in this case, the transacation in question did not constitute a loan notwithstanding the fact that under the broad powers given a bank by statute, it may contract respecting a deposit as fully as it may respecting any other subject matter excepting only where the rights of third persons, such as creditors, and depositors, are involved.
Our attention had been called to several cases outside of of Ohio, all of which we have examined. There is also a very recent case in New York, State Bank, etc., v. Stone, 184 N.E. 750, to which we wish to call attention. In this case the court considered the implied power of a bank to pledge its assets as security for private deposits and determined that the bank had no implied power so to do. It is a well considered case. The opinion of the court contains a review of the authorities including State Bank, etc. v. Consolidated School, etc., 174 Minn. 286, 219 N. W. 163. Commonwealth Bank, etc. V. Citizens, etc., 153 Ky. 566, 156 S. W. 160 cited by counsel. We quote from the opinion on page 754 viz:
*157 “We share these opinions expressed by the highest courts of other states from which we have so copiously quoted. Reason, as well as authority indicates that a bank has no •implied power to pledge its assets as security for private deposits. To open the door to such a practice would permit officers and directors to favor their relatives and friends, submitting our entire banking system to justifiable suspicion. Faith in the honesty and integrity, impartiality, and fairness of our banks is the backbone of credit and the strength of commercial enterprise.”
However, the lack of authority to enter into the arrangement between the bank and the Board of Stewards standing alone, is not decisive of the issues in this case. The contract in question has been executed so far as the Board of Stewards is concerned. The bank has had the use and profit of the funds so deposited and we believe, under the circumstances of this case, it is obliged to carry out its part of the contract. He who seeks equity must do equity. In other words, the bank has received the benefits of this deposit and it cannot escape the burden attached. To have permitted the bank prior to its closing, to recover this collateral security without surrendering the balance of the money on deposit, would have been violative of every principle of fair dealing and honesty. The closing of a bank should not have the effect of obliterating established rules of business integrity. The contract in question and the pledging of the assets of the bank to secure the deposit made in pursuance thereof is not malum'per'se nor malum prohibitum. The superintendent of banks takes the situation as he finds it. He is without power to extend his field of rights. The covenants of the bank under the circumstances in this case become his covenants to the same extent as if he himself were the covenantor.
In this connection, we again call attention to the Court of Appeals case in New York and quote from the opinion on page 754.
“This does not necessarily mean, however, that the judgment of the courts below must be reversed, as we have to consider the effect of ultra vires. In pledging these bonds, the officers were acting for and on behalf of the bank, and for its business, apparently seeking to obtain deposits which under the banking' law it was authorized to receive. They *158 applied the deposits to the bank’s business, and the bank has had and received the benefit of the money due to the agreemént which the bank made, and the bonds which it delivered as security. Under these circumstances, it would not be just for the bank or its creditors to accept all the benefits and requdiate the burdens, unless the acts of the bank be in violation of some direct and positive statute. Whatever the difference of view there may be as to the effect of ultra vires on corporate contracts, in no jurisdiction can a party retain what it has received under such a contract and refuse to perform the contract.”
We find a similar doctrine announced in Ohio Jurisprudence Vol. 5, page 365, Sec. 74.
“Banks, however, like other corporations, cannot keep property obtained by means of an ultra vires contract, and still refuse performance on its part; if the contract is partly executed they must either repudiate it and make full restitution, or be bound thereby in toto.”
Our conclusion is that the contract entered into between the bank and said board is enforcible to all intents and purposes against the superintendent of banks as it was against said bank prior to its closing. Finding and judgment in favor of the Board of Stewards and against the plaintiff. An entry may be prepared in accordance with the foregoing, saving exceptions.