CITY OF MOUNT VERNON, Respondent, *v.* THE MOUNT VERNON TRUST COMPANY, Appellant.

(Argued March 11, 1936; decided April 14, 1936.)

*Clinton T. Taylor* and *James D. Hopkins* for appellant. The pledge by the defendant securing the deposit of the plaintiff is *ultra vires* as to both parties. (*State Bank of Commerce* v. *Stone*, 261 N. Y. 175; *Ganse* v. *Commonwealth Trust Co.*, 196 N. Y. 134; *Foster* v. *City of Longview*, 26 S. W. Rep. [2d] 1059; *Texas & Pacific R. R. Co.* v. *Pottoroff*, 291 U. S. 245; *City of Marion* v. *Sneeden*, 291 U. S. 262; *Lewis* v. *Fidelity & Deposit Co.*, 292 U. S. 559; *Temple* v. *McKay*, 174 S. E. Rep. 23; *Ruden* v. *City of Platte*, 252 N. W. Rep. 32; *Eckerson* v. *United States Dist. Court*, 7 Fed. Supp. 201; *Commercial Bank & Trust Co.* v. *Citizens Trust & Guarantee Co.*, 153 Ky. 566; *Tracy* v. *Talmadge*, 14 N. Y. 162.) The city as a depositor in the trust company was and is a general creditor. (*Shipman* v. *Bank of New York*, 126 N. Y. 318; *General Fire Assur. Co.* v. *State Bank*, 177 App. Div. 745; *Matter of Northern Bank of New York*, 85 Misc. Rep. 594; 163 App. Div. 974; 212 N. Y. 608.) The plan of reorganization of the defendant is binding upon the plaintiff by virtue of mutual consent or by operation of law, and the deposit must be returned in accordance with the terms of the plan. (*Shepherd* v. *Mount Vernon Trust Co.*, 269 N. Y. 234; *Cox* v. *Stokes*, 156 N. Y. 491; *United Water Works* v. *Omaha Water Co.*, 164 N. Y. 41; *Jacobs* v. *Fensterstock*, 236 N. Y. 39; *Clapp* v. *Guy*, 31 App. Div. 535; *Hanrahan* v. *Terminal Station Comm.*, 206 N. Y. 494; *Bowden* v. *Owen*, 103 Misc. Rep. 56; 187 App. Div. 910; 227 N. Y. 612; *Treadwell* v. *Owen*, 124 App. Div. 260; *Herder* v. *Clifford*, 252 N. Y. 141; *Matter of Gilman*, 82 App. Div. 186; *Ormiston* v. *Olcott*, 84 N. Y. 339; *Matter*

*of Morse,* 247 N. Y. 290; *Noble State Bank* v. *Haskell,* 219 U. S. 104; *Norman* v. *Baltimore & O. R. R. Co.,* 55 Sup. Ct. Rep. 407.)

*Lester D. Stickles, Corporation Counsel* (*Arthur H. Ellis* and *Herbert R. Goldstein* of counsel), for respondent. Plaintiff occupies the status of a secured creditor of defendant. (*State Bank of Commerce* v. *Stone,* 261 N. Y. 175; *Matter of Broderick,* 140 Misc. Rep. 861; *Matter of Bank of Spencerport,* 143 Misc. Rep. 196; *Browne* v. *City of New York,* 241 N. Y. 96; *Bareham* v. *City of Rochester,* 221 App. Div. 36; 246 N. Y. 140; *City of New York* v. *Village of Lawrence,* 250 N. Y. 429; *Matter of Mayor of New York* [*Elm St.*], 246 N. Y. 72; *Texas & P. R. Co.* v. *Pottoroff,* 291 U. S. 245; *Maryland Casualty Co.* v. *Okmulgee County,* 128 Okla. 58.) The status of plaintiff as a secured creditor is not affected even though the deposit of securities by the defendant was *ultra vires.* (*Bissell* v. *Michigan, So. & No. Ind. R. R. Co.,* 22 N. Y. 258; *Walden Nat. Bank* v. *Birch,* 130 N. Y. 221; *National Bank of Xenia* v. *Stewart,* 107 U. S. 676; *American Surety Co.* v. *Philippine Nat. Bank,* 245 N. Y. 116; *Parish* v. *Wheeler,* 22 N. Y. 494; *Bath Gas Light Co.* v. *Claffy,* 151 N. Y. 24; *Appleton* v. *Citizens' Central Nat. Bank,* 190 N. Y. 417; 216 U. S. 196; *Holmes & G. M. Co.* v. *Holmes & W. M. Co.,* 127 N. Y. 252; *Quintal* v. *Fidelity & Deposit Co.,* 142 Misc. Rep. 657; 238 App. Div. 820; *State Bank of Commerce* v. *Stone,* 261 N. Y. 175.) Plaintiff was entitled to have the percentages of cash payment computed upon its entire balance on deposit, without regard to the security or proceeds thereof. (*People* v. *Remington & Sons,* 121 N. Y. 328; *McGrath* v. *Carnegie Trust Co.,* 221 N. Y. 92; *Matter of Andes Co-operative Dairy Co.* v. *Baldwin,* 238 App. Div. 726; 263 N. Y. 578; *People* v. *Granite State Provident Assn.,* 41 App. Div. 257; 161 N. Y. 492; *Matter of Simpson,* 36 App. Div. 562; 158 N. Y. 720; *Matter of Kearns,* 139 Misc. Rep. 877; *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131; *United*

*States Fidelity & Guaranty Co.* v. *Centropolis Bank*, 17 Fed. Rep. [2d] 913; *Viets* v. *Union Nat. Bank*, 101 N. Y. 563; *Broderick* v. *Aaron* [*Kornberg*], 268 N. Y. 260; *Barnes* v. *Arnold*, 23 Misc. Rep. 197; 45 App. Div. 314; 169 N. Y. 611; *Priest* v. *Whitney Loan & Trust Co.*, 261 N. W. Rep. 375; *State* v. *Childers*, 202 Iowa, 1137; *People* v. *Dubia*, 289 Ill. 276; *State* v. *Myers*, 54 Kan. 206; *DeCordova* v. *Barnum*, 130 N. Y. 615; *First Nat. Bank of Seattle* v. *Glidden*, 175 App. Div. 563; 225 N. Y. 698; *National Bank of Rochester* v. *Erion-Haines Realty Co.*, 213 App. Div. 54.) The plan of reorganization did not and could not affect the plaintiff. (*Matter of Peck* v. *Town of Galt*, 46 Upper Canada [Q. B.], 211; *Matter of Township of Romney*, 11 Ont. App. 712; *Parr* v. *Village of Greenbush*, 72 N. Y. 463; *Moore* v. *Mayor*, 73 N. Y. 238; *Van Dolsen* v. *Bd. of Education*, 162 N. Y. 446; *McDonald* v. *Mayor*, 68 N. Y. 23; *Donovan* v. *Mayor*, 33 N. Y. 291; *Brooklyn City R. R. Co.* v. *Whalen*, 111 Misc. Rep. 348; 191 App. Div. 737; 229 N. Y. 570; *Belt Line Ry. Co.* v. *New York*, 118 Misc. Rep. 665; *Smith* v. *Smythe*, 197 N. Y. 457; *Mt. Sinai Hospital* v. *Hyman*, 92 App. Div. 270; *O'Brien* v. *Mayor*, 40 App. Div. 331; 160 N. Y. 691; *Oswego Falls Corp.* v. *City of Fulton*, 148 Misc. Rep. 170; *Matter of New York, L. & W. R. R. Co.*, 98 N. Y. 447; *Crouse* v. *McVickar*, 207 N. Y. 213; *Hong Kong & S. Banking Corp.* v. *Cooper*, 114 N. Y. 388; *Hine* v. *New York Elevated R. R. Co.*, 149 N. Y. 154; *Shepherd* v. *Mount Vernon Trust Co.*, 269 N. Y. 234.)

FINCH, J. This is an appeal by defendant-appellant, pursuant to permission of this court, from a summary judgment in favor of the plaintiff granted at Special Term and unanimously affirmed by the Appellate Division, second department.

The city of Mount Vernon pursuant to local law (Laws of 1931, Local Law No. 1, amending Laws of 1922, ch. 490) duly designated the defendant a depositary, and fixed the sum of $800,000 as the amount of the surety

bond to be given by said defendant as security or in lieu thereof the amount of legal securities to be deposited by the defendant with the City Comptroller.

Pursuant to the bank holiday proclamation by the President of the United States, dated March 6, 1933, the defendant was closed. On March 14th the defendant opened on a restricted basis making available to depositors ten per cent of their respective deposits. Prior to this date the city had received from the defendant as security $510,000 in United States Treasury certificates and $290,000 in city of Mount Vernon tax anticipation certificates and had on deposit something over $1,000,000 to the credit of the plaintiff.

Thereafter a plan of reorganization was promulgated pursuant to section 61-a of the Banking Law (Cons. Laws, ch. 2; Laws of 1933, ch. 772), which was submitted to all depositors and stockholders in an effort to rehabilitate the defendant so that it might do business without restriction and return to its depositors more than might ever become available in liquidation proceedings, and certainly make available to them more in the form of immediate cash. This proposed agreement in brief provided that fifty-five per cent of the deposits was to be paid in cash upon the unrestricted opening of the bank and the remaining forty-five per cent paid by certificates of beneficial interest in certain segregated assets to the extent of thirty-three and three-fourths per cent and by capital stock of the defendant to the extent of eleven and one-fourth per cent.

The ordinance of the Common Council, after reciting the closing of defendant, the permission to open on a restricted basis making available to depositors ten per cent and the plan to reorganize and remove all restrictions, authorized the city to execute a depositor's agreement upon the following conditions: " That the right of the City * * * to enter into this agreement be subject to the approval of the Appellate Division * * * " which is to consider whether it was legal for the city to accept stock in the reorganized bank

and interest in the fund of segregated assets and whether it was legal for the city to accept, in lieu thereof, the net proceeds of sale of such stock and the interest in such fund, if the sale were held within a reasonable time. Also, whether the method of computing the amount available of the deposit of the city, as made by the Superintendent of Banks, was proper, and whether the defendant was empowered to pledge these securities as collateral to secure the deposit of said city moneys in the Mount Vernon Trust Company. Lastly whether any or all of the funds of the city of Mount Vernon in the Mount Vernon Trust Company are preferred. In other words, these officials were fearful lest their actions might be illegal and desired to shift the entire responsibility to the courts.

Pursuant to such authority, the city duly executed with the defendant a depositor's agreement authorizing the defendant to invest eleven and one-fourth per cent of the withheld balance in the purchase of capital stock in accordance with the plan of reorganization and pay the balance by a certificate of beneficial interest in certain segregated assets, " Provided, however, that whereas the funds on deposit to the credit of  *  *  *  the City of Mount Vernon are  *  *  *  partly secured by deposit of collateral, this agreement applies to the unsecured portion of such deposit only upon the following conditions; " and then follow the same conditions as in the ordinance adopted by the Common Council reserving any question of illegality for the courts together with a provision that in case it shall be decided by the Appellate Division that the city of Mount Vernon is not authorized to enter into the aforesaid agreement to accept shares of stock or a certificate of interest in the segregated assets that then the foregoing agreement shall be deemed to be null and void.

Pursuant to the above a submission of controversy was duly submitted to the Appellate Division but was dismissed as stating no controversy.

On June 5, 1934, the trust company reopened without restrictions pursuant to said plan of reorganization. The defendant thereupon received fifty-five per cent in cash applied as expressly provided for in the agreement, namely, to the unsecured portion of the deposit.

This action is now brought for the payment of $103,000 in cash, being the approximate difference between the amount of the original deposit owed to the city less the credit from the sale of the pledged securities, and the payment in cash of ten per cent at the time of the restricted opening and fifty-five per cent at the time of the unrestricted opening.

By stipulation between the parties, dated July 27, 1934, the sale of the pledged securities or the withdrawal of any sums made available by the unrestricted opening of the defendant was not to be construed as a waiver of any rights either of the plaintiff or the defendant and the constitutionality and validity of the statute authorizing the reorganization of the defendant was not to be challenged. (Laws of 1933, ch. 772, known as § 61-a of the Banking Law.)

First, we are brought to a consideration of the effect of the pledge of securities covering the deposit as to either or both the city and the bank. No question remains that this pledge by the defendant securing the deposit was *ultra vires* as to both parties. (*State Bank of Commerce* v. *Stone*, 261 N. Y. 175; *Texas & Pacific Ry. Co.* v. *Pottorff*, 291 U. S. 245; *City of Marion* v. *Sneeden*, 291 U. S. 262. Cf. *Lewis* v. *Fidelity & Deposit Co.*, 292 U. S. 559; 32 Columbia Law Review, pp. 1065, 1066.) Before the defendant, however, may repossess itself of the collateral it must first return in full the moneys which it received from the plaintiff under the agreement it now disclaims. (*State Bank of Commerce* v. *Stone*, 261 N. Y. 175.) In default of such return, plaintiff was entitled to credit the amount received from the sale of the collateral against the deposit.

We are next brought to a consideration of the effect of the formal execution and acceptance by the city pursuant to a duly enacted ordinance of the agreement signed by nearly all the depositors and repudiated alone by the city, pursuant to which manifold new rights and duties have arisen.

It is a fair inference from the record that the city was anxious to do what it could to bring about the unrestricted opening of the defendant so that more cash would be immediately and perhaps ultimately available to the city in this way than through liquidation.

The city has the implied power to compromise its claim. (McQuillin on the Law of Municipal Corporations [2d ed., 1928], vol. 1, § 384; vol. 6, § 2643; Tiedeman on the Law of Municipal Corporations, § 142.) The amount recoverable by the city in a liquidation proceeding being uncertain, compromise was entirely justified. (Cf. *Ormiston* v. *Olcott*, 84 N. Y. 339.)

The ordinance adopted by the Common Council and the plan executed by the city reveal a complete assent to the plan leaving only the power of the city and its legality to be passed upon by the courts. The ordinance and the agreement amount to complete acquiescence in the plan with the sole reservation that the agreement shall be null and void if it is found to be " illegal," not " authorized," or not " proper." If the word " proper " had been used alone it might be argued that the agreement left open the question whether the method of computation provided in the agreement was the method the courts would apply in the absence of an agreement. Read in its context, however, it is obvious that " proper " is used as a synonym of " legal " or " authorized." It is used in a clause found between clauses containing these other words and the principle of *ejusdem generis* applies. This view is confirmed by the fact that the provision of the agreement which sums up the grounds upon which it may be deemed null and void does not

use the various synonyms but repeats the word " authorized." Moreover, a reading of the ordinance and the agreement as a whole leaves no doubt that the assent of the city to the plan was formal and complete saving only for the courts the question of its legal right and authority to assent thereto. Since no question is to be raised as to constitutional validity and since the city had a right to compromise, the only question remaining is whether the depositors' agreement applied to the whole of the deposit or only to that portion which remained after crediting the value of the collateral. This question is not difficult to answer. By the very terms of the agreement it expressly " * * * applies to the unsecured portion of such deposit only * * *."

We are thus brought to the conclusion that the city was duly authorized by the Common Council and the Board of Estimate and Contract to enter formally into an agreement with the defendant and the other depositors and stockholders which was approved by over eighty per cent of the depositors and over two-thirds of the stockholders. Under this agreement new capital has been raised resulting in the immediate payment in cash of fifty-five per cent to the city and to other depositors. This depositors' agreement specifically applied only to the unsecured portion of the deposit of the city, subject only to the legal power of the city to enter into such an agreement which was to be determined by the courts. When the Appellate Division because of the lack of an actual controversy declined to pass upon the legality of the plan that question remained open. We now determine that the city had the right to compromise its claim in the way that it did and hence is bound by its assent to the plan.

It follows that the judgments appealed from should be reversed and the motion for summary judgment denied, with costs in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS and CROUCH, JJ., concur; LEHMAN and LOUGHRAN, JJ., concur in result.

Judgments reversed, etc.