## DOWNEY v. CITY OF YONKERS.

District Court, S. D. New York.
June 13, 1938.

1020

Benjamin W. Moore, of Yonkers, N. Y., for plaintiff.

Leonard G. McAneny, Corp. Counsel, of Yonkers, N. Y. (Morris L. Rosenwasser and Harold T. Garrity, both of Yonkers, N.Y., of counsel), for defendant.

KNIGHT, District Judge.

On March 4, 1933, the defendant, City of Yonkers, New York, had on deposit in the First National Bank and Trust Company of Yonkers, New York, moneys in the accounts and sums hereinafter named, to wit: (1) Treasurer of the City of Yonkers, $275,105.53; (2) City of Yonkers, $1,502.-84; (3) Nepperhan Sewer Fund, $621.88. A bank holiday was proclaimed by the Governor of New York on March 4, 1933, and by the President of the United States on March 6, 1933. The Comptroller of the Currency, pursuant to statute, appointed a conservator of the First National Bank and Trust Company (hereinafter called bank) on March 20, 1933, and a successor conservator on July 24, 1933. A receiver was appointed on January 23, 1934, and the plaintiff, as successor to such receiver, was appointed on November 15, 1937. The latter has continued to act since the last stated date. The bank never opened its doors for transaction of regular business after March 4, 1933.

The purported authority for the deposit of the funds aforesaid is a resolution adopted by the Board of Estimate and Apportionment of the City of Yonkers on July 10, 1929. Such resolution designated five several banks as depositories "for all moneys of the City deposited by the City Treasurer", and it directed the City Treasurer to "continue to procure adequate security for all moneys deposited by him * * *" in the designated depositories. On September 30, 1929, three of the aforesaid depositories were merged under the name of the First National Bank and Trust Company of Yonkers, New York.

On March 4, 1933, the bank had on deposit with the City as security for the aforesaid accounts bonds of the par value of $535,000. Between March 8, 1933, and January 23, 1934, inclusive, the City of Yonkers (hereinafter designated city) by various checks withdrew $274,979.04 of the aforesaid account of $275,105.53, (designated "Treasurer the City of Yonkers");

between May 23, 1933, and July 21, 1933, inclusive, the City withdrew the entire aforesaid account "City of Yonkers" in the sum of $1,502.84; and on May 4, 1933, it withdrew the entire balance of $621.88 in the "Nepperhan Sewer account." All the withdrawals aforesaid, except the Nepperhan Sewer account, were on pay roll checks issued by the City. Between March 29, 1933, and July 20, 1933, inclusive, the City returned to the bank the aforesaid pledged securities to the amount of $534,000. The conservator gave receipts for such securities, reciting therein that they were "without prejudice to the City of Yonkers." The depositors of the bank have been paid a dividend of fifty percent. This suit is brought to recover the difference between the amount which the City would receive as a fifty percent dividend upon such deposits and $277,103.76, the amount actually paid the City through the above-mentioned withdrawals. The basis of the alleged cause of action is that the pledges by the bank to secure defendant's deposits were illegal, void, and ultra vires. The answer denies this and also presents several other alleged defenses. The foregoing statement of facts is not disputed.

There is no federal statute giving authority to federal banks to pledge securities for deposits generally. There are numerous statutes authorizing this in specific instances. State banks in different states were given authority by state law to pledge their assets in certain cases, and in order to equalize the footing in this respect between state and federal banks, Chapter 604, 46 Stat. 809, 12 U.S.C.A. § 90, was enacted. That provides that a federal bank may, upon the deposit of public money of a State or any political subdivision thereof, * * * give security for the safe keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State." This statute has received interpretation by the Supreme Court in Texas & Pacific Ry. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, with respect to private deposits, and in City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, in respect to public deposits. Vide also Griffin v. Royall, 4 Cir., 70 F.2d 103; Leonard v. Gage, 4 Cir., 94 F.2d 19; Redfield Ind. School Dist. No. 20 v. Schnetzer, 8 Cir., 94 F.2d 257. It is

not questioned that the deposits aforesaid were public funds. Said the court in City of Marion v. Sneeden, supra (page 422): "A national bank could not legally pledge assets to secure funds of a state, or of a political subdivision thereof, prior to the 1930 amendment; and since then it can do so legally only if it is located in a state in which state banks are so authorized." The controlling question then is whether a state bank in the State of New York was authorized to secure deposits of public funds by the City of Yonkers, which is a city of the second class, as defined by statute. Concededly, there is no specific statute in New York authorizing such a pledge. Defendant contends that such state banks have the implied power to do this, and that such power is "established and recognized by practice, public policy, the decisions of the courts and the legislative policy of enacting statutes," that the common law as declared by the courts authorized pledging these securities in State banks and therefore the acts complained of were legal.

■ Numerous provisions are found in the statutes of the State of New York authorizing the pledging of assets to secure specified public funds. These are found in the State Finance Law, Consol.Laws, c. 56, the County Law, Consol.Laws, c. 11, the Education Law, Consol.Laws, c. 16, the Village Law, Consol.Laws, c. 64, and certain city charters. The enactment of these statutes denies rather than affirms any public policy recognizing the right to make these pledges. As was said by the Attorney General of the State of New York in opinion under date of June 15, 1933, in referring to these various provisions: "It will be noted that all of the provisions thus far herein cited concern themselves with public moneys * * * this might lead to the conclusion that in the absence of a special act therefor banks may not give security for deposits made by public officers and agents."

■ In Hellawell v. Town of Hempstead, D.C., 10 F.Supp. 771, in Matter of Broderick, 140 Misc. 861, 252 N.Y.S. 68, and Matter of Bank of Spencerport, 143 Misc. 196, 255 N.Y.S. 482, it was in effect held that the public policy of the State of New York authorizes state banks to "pledge their assets as security for public moneys * * *." It is pointed out in this connection that, by the Enabling Act of 1930, 12 U.S.C.A. § 90, the bank may give security of the same kind as "is authorized by the law of the State in which such association is located," and that this use of the word "law" in the place of the word "statute" has significance as conveying a broader meaning than "statute." Granting such interpretation, the "law" is what the highest court of the state of New York has said it is. The last-above decisions must yield to the decision of the Court of Appeals, as the highest court. "An authoritative determination of the question * * * can be given only by its highest court." City of Marion v. Sneeden, supra. The Court of Appeals of the State of New York has spoken, and it has determined the law of that state. State Bank of Commerce v. Stone, 261 N.Y. 175, 184 N. E. 750, 87 A.L.R. 1449; City of Mount Vernon v. Mount Vernon Trust Co., 270 N.Y. 400, 1 N.E.2d 825. Defendant reads the opinion in State Bank of Commerce v. Stone, supra, as recognizing an implied power to pledge securities. Careful reading of the opinion refutes this claim. The court said (page 754): "Whatever doubt there may have been regarding the power of banks to secure deposits of public moneys has been removed by statute." (It there refers to three specific statutes, to wit: State Finance Law, County Law, and Greater New York Charter) And further, "An act of the Legislature was evidently thought necessary, even as to public moneys, to enable banks to pledge certain securities for undertakings or deposits." Such include the last three enactments above-mentioned. Said the court in City of Mount Vernon v. Mount Vernon Trust Co., supra (page 827): "No question remains that this pledge of the defendants securing the deposit was ultra vires as to both parties." The Attorney General of the State of New York passed upon the precise question at issue here, and he concluded that "In the absence of express statutory provision, banks cannot pledge their assets to secure deposits of such public moneys." "Thus in answering your direct question, it is my opinion that deposits made by * * * city treasurers, * * * and similar local officers and agencies of public moneys received in such official capacity, can not be secured by a pledge of bank securities in the absence of express statutory authority."

■ Banks are the creation of statute. Their authority is necessarily limited strictly by statute. Pledge of deposits may

lead to serious injury to unsecured depositors. Authority based on implied power must be clearly established.

The President's Proclamation of March 6, 1933, No. 2039, 12 U.S.C.A. § 95 note, provided that the Secretary of the Treasury, with the approval of the President, under an adopted regulation, had power "to permit any or all of such banking institutions to perform any or all of the usual banking functions." An Executive Order of the President of March 10, 1933, No. 6073, 12 U.S.C.A. § 95 note, continued the status of banks as in the Proclamation aforesaid, with certain modifications here immaterial. Under the authority of the Proclamation and Executive Order aforesaid, the Secretary of the Treasury adopted Regulation No. 9, which, among other things, provided that "Any National or State banking institution may exercise its usual banking functions to such extent as its situation shall permit and as shall be absolutely necessary to meet the needs of its community for food, medicine, other necessities of life, * * * for the payment of usual salaries and wages; for necessary current expenses and for the purpose of maintaining employment, and for other similar essential purposes, * * * provided (3) no national banking association shall engage in any transaction under this Section which is in violation of any Federal law * * *. Each banking institution and its directors and officers will be held strictly accountable for the faithful performance, with the spirit and purpose, as well as the letter of this regulation." If the bank was insolvent when these pay roll checks were paid, payment was in violation of the statute, (Title 12, sec. 91, U.S.C., 12 U.S.C.A. § 91, Rev.Stat. § 5242) and payment of such checks was prohibited; otherwise they were permitted payments.

There is no direct proof of the insolvency of the bank prior to January 23, 1934, when the receiver was appointed. There is no specific allegation in the Complaint herein that the bank was insolvent. The Complaint sets out the various proceedings relative to the suspension of business, the appointment of the conservator and his successor and the appointment of the receiver. Defendant contends that the burden rests upon the plaintiff to establish insolvency. It seems to me under the circumstances in the case that a presumption of insolvency as of March 6, 1933, arises and continues to the time of the appointment of a receiver, since the bank never opened its doors for the transaction of regular business after March 6, 1933. The conservator was appointed less than two weeks from the date of closing, and a conservator or conservators continued in possession until the appointment of a receiver.

The Act of March 9, 1933 (48 Stat. 2, 12 U.S.C. 201 et seq., 12 U.S.C.A. § 201 et seq.) provides for the appointment of a conservator to "take possession of the books * * * and take such action as may be necessary to conserve the assets of such bank pending further disposition of its business as provided by law." 12 U.S.C.A. § 203. Treasury Regulation 30 authorizes the conservator to transact a limited business of the bank as authorized by aforesaid Regulation 10. The purpose of the appointment of a conservator is to hold matters in status quo pending a receivership or some change which may allow the bank to re-open. Between the official closing of a bank and the appointment of a conservator or receiver, additional liabilities may not be imposed upon the assets of a bank. Bryce v. National City Bank of New Rochelle, D.C., 17 F. Supp. 792. Section 203, 12 U.S.C., 12 U.S.C.A. § 203, in part, provides: "During the time that such conservator remains in possession of such bank, the rights of all parties with respect thereto shall, subject to the other provisions of this sub-chapter, be the same as if a receiver had been appointed therefor." It follows therefore that the rights of creditors relate back to the date of the closing of the bank pursuant to the President's Proclamation of March 6, 1933. Goess v. Heckscher, Opinion by Knox, J.[1] (D.C.S.D.N.Y.); Hardee v. Washington Loan & Trust Co., 67 App. D.C. 241, 91 F.2d 314; Mine Safety Appliance Co. v. Dehm,[1] Feb. 3, 1938; Bryce v. National City Bank of New Rochelle, supra. In Pyne v. Jackman, D.C., 12 F. Supp. 653, and Aufderheide v. Mine Safety Appliance Co., D.C., 9 F.Supp. 918, it is held that these rights relate back to the time of the appointment of a conservator. Presumptively the bank was insolvent when all of the deposits in question were paid out. Payment thereof was prohibited by Section 91, 12 U.S.C., 12 U.S.C.A. § 91, supra, and also Regulation No. 9.

---

[1] No opinion for publication.

Payment of these pay roll accounts to defendant constituted a preference. Pledge of these securities was illegal and ultra vires.

 The Court of Appeals of the State of New York, both in State Bank of Commerce v. Stone and City of Mount Vernon v. Mount Vernon Trust Co., supra, has stated that where an insolvent bank has pledged its assets to secure deposits of public funds it can not repossess itself of such assets until there is paid back the deposits secured. That is not the federal law. While the aforesaid amendment of 1930 describes the application of the state law in determining whether a pledge is or is not illegal, it says nothing about the effect of an illegal pledge. The federal courts have many times held and in cases as recent as City of Marion v. Sneeden, supra, and Texas & Pacific Ry. Co. v. Pottorff, supra, that payments voluntarily made by an officer of the United States under mistake of law can be recovered. Said the court in City of Marion v. Sneeden, supra: "Since the Herrin bank was without power to make the pledge of bonds here in question, its receiver is entitled to recover them unconditionally in order that they may be administered for the benefit of the general creditors of the bank." Leonard v. Gage, 4 Cir., 94 F.2d 19; Redfield Independent School Dist. v. Schnetzer, 8 Cir., 94 F.2d 257; O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146; Cranzow v. Village of Lyons, Ill., 7 Cir., 89 F.2d 83, and many other cases are to the same effect. The instant case does not come within the purview of Erie Ry. Co. v. Harry J. Tompkins, 58 S.Ct. 817, 82 L. Ed. ——, 114 A.L.R. 1487, decided April 25, 1938. The regulation of the conduct of the federal banks is peculiarly in the power of the federal government. As seen, the courts have interpreted the power of national banks with respect to payments made under mistake of law. The subject matter itself does not involve a question of the law of the State of New York as declared by its courts.

 No notice of claim or intention to sue was served. This was not required. Defendant claims it was by virtue of the language in Sections 64 and 244 of the Second Class Cities Law of the State of New York (Chap. 55 Laws of 1909), Consol.Laws, c. 53. Section 64 contains no provision with reference to any suits brought on claims. Its language is in no wise applicable to a claim such as made here. Marcy v. City of Syracuse, 199 App. Div. 246, 192 N.Y.S. 674. Section 244 provides that the City shall not be liable in certain cases unless a claim in writing and notice of intention to sue have been given. The section applies only to suits sounding in tort. It is applicable only to an action "for damages or injuries to person or property * * * alleged to have been caused or sustained * * * by or because of any omission of duty, wrongful act, fault, neglect, misfeasance or negligence * * *." Marcy v. City of Syracuse, supra (page 677). Citation is made of Reining v. City of Buffalo, 102 N.Y. 308, 6 N.E. 792, in which it was said (page 793): "It attaches to all actions whatsoever * * *." That case construed a City of Buffalo Charter which was entirely different in effect from the Second Class City Charter Law Sec. 244. In Thomann v. City of Rochester, 256 N. Y. 165, 176 N.E. 129, it was said (page 131): "The statute tells us that notice shall be given whenever damages are demanded, whether the claim is one 'arising at law or in equity' * * *." Defendant cites several cases in the courts of New York State. Examination of each of these will disclose that each is an action in tort or sounding in tort.

 The deposit in the aforesaid "Nepperhan Sewer Fund, City of Yonkers" was of moneys received, by the City of Yonkers from the County of Westchester, for the sale of a public sewer. Westchester County Sewer Act, Chapter 603 of the Laws of 1926, as amended by Chapter 658 of the Laws of 1927, and Section 13, provides that the Sewer Commission may purchase existing sewerage works and that the amount paid therefor be used by the municipality, City of Yonkers, first to pay outstanding obligations against sewerage work sold and second, the remainder to be credited to general fund of the municipality. There would seem to be little doubt that this is a deposit of public funds. However, it makes no difference whether it is a public or private fund. Pledging of assets to secure private deposits is without authority in law. Texas & Pacific Ry. Co. v. Pottorff, supra; Buckley v. Southwestern National Bank, 3 Cir., 88 F.2d 263; State Bank of Commerce v. Stone, supra. What has heretofore been

said with reference to the other deposits made with the bank is applicable to this particular deposit.

I find:

(1) That the pledge of assets by the First National Bank and Trust Company of Yonkers, New York, to secure deposits by the City of Yonkers in the three several accounts, to wit, Treasurer of the City of Yonkers, $275,105.53; City of Yonkers, $1,502.84; and Nepperhan Sewer Fund, City of Yonkers, $621.88, was illegal and ultra vires.

(2) That the First National Bank and Trust Company was insolvent as of the 6th day of March, 1933, and that the rights of the general creditors of the First National Bank and Trust Company became fixed as of March 6, 1933.

(3) That all of the payments by the conservator of the deposits aforesaid of the City of Yonkers were made with the view to the preference of the City of Yonkers over other creditors of the First National Bank and Trust Company.

(4) That the payments of such deposits by the conservator of the First National Bank and Trust Company to the City of Yonkers were not "permitted" payments as allowed under the authority of the Proclamation of the President of March 6, 1933, the Executive Order of March 10, 1933, and Regulation No. 10 of the Secretary of the Treasury.

(5) That no service of any notice of claim or of intention to sue by the First National Bank and Trust Company, through its receiver, was required.

(6) That the payments of the deposits aforesaid by the First National Bank and Trust Company to the City of Yonkers were voluntarily made under mistake of law by an officer of the United States and are recoverable.

(7) That the plaintiff is entitled to recover of the defendant the sum of $138,551.88, being the difference between the amount which the plaintiff should have received as a fifty percent dividend from the bank and the amount paid by the bank to the City on account of the three several deposits aforesaid, with interest from April, 1936.

This opinion is to be taken as and for the Findings of Fact and Conclusions of Law required by the practice.

Any deficiency in this respect may be supplied by the submission of the Court of additional findings and the signing thereof by the Court.